Filed June 5, 1894.

---

No. 16,748.

## REID v. KLEIN ET AL.

DESCRIPTION. — Deed. — Conveyance.—Real Estate. —"South Line of Street."—"North Line of the Railroad Track."—In a deed of conveyance was the following description: "Beginning on a line dividing the northeast quarter of section 15, township 20, range 10 east, at a point ranging with the south line of Adams street, Muncie; thence south with said quarter section line to the north line of the 'railroad track;' thence eastwardly far enough to make three acres by a line from thence north to a point running with said street aforesaid, and therewith westwardly to the place of beginning." Questions: (1) Where is the starting point of the description? in the south line of the street as it then was (45 feet wide), or in the south line, as shown by the recorded plat (60 feet wide)? (2) What was the terminus of such line on the south, designated by the words "north line of the railroad track?"

Held, (1) that the starting point of the description was in the south line of the street as established by the recorded plat.

Held, (2) that such line terminated at the north rail of the railroad track, the terms "railroad track" and "railroad right of way" having separate and distinct meanings.

Held, also, that when anything exists to meet the call, an ambiguity can not exist.

SAME.—*When can not be Varied by Extrinsic Evidence.*—Where there is no equivocation in the language of a description, and there are present objects, monuments, lines, streets or places answering the call in the deed, no ambiguity exists, and the rule applies that the effect of a written instrument can not be varied by extrinsic evidence.

CONTRACTS.—*Written.*—*Duty of Court to Construe.*—*Ambiguity.*—*Evidence as to Situation, etc., of Parties.*—*Practice.*—In cases arising out of written contracts or instruments it is always for the court to construe the language and make the interpretation, and it is for the purpose of informing the court's mind, when he thinks there is ambiguity in the instrument, that evidence is heard as to the situation of the parties and their surroundings, in order to construe it and lay down the rule concerning their rights thereunder.

From the Delaware Circuit Court.

*J. N. Templer, J. F. Duckwall* and *E. R. Templer,* for appellant.

*J. W. Ryan* and *W. A. Thompson,* for appellees.

DAILEY, J.—This was an action brought by the co-appellees, Henry C. Klein, Ila T. Lake, Richard McGauley and Eugene Kelly, as plaintiffs, against appellant, as sole defendant, in the court below, to quiet title to, and for possession of, certain real estate situated in the city of Muncie, Delaware county, Indiana, described in the complaint.

The complaint is in three paragraphs, the first and third of which are for possession, and the second to quiet title. The appellant demurred to the first and second paragraphs of the complaint for want of sufficient facts, which demurrers were overruled, and the appellant reserved exceptions thereto.

Afterwards, upon leave granted by the court, Sarah H. Kirby, Thomas H. Kirby, Martha A. Hamilton, John M. Kirby, Elizabeth K. Heinsohn and George Kirby entered their appearance as defendants to this action and filed their cross-complaint against the plaintiffs and the appellant, claiming title to a part of the real estate de-

scribed in the complaint, and making the usual aver-
ments in relation thereto.

The appellant filed his answers in general denial to
the complaint and to the cross-complaint of the Kirbys,
Hamilton, and Heinsohn. The appellant also filed his
cross-complaint against the plaintiffs and his codefend-
ants, being the appellees, in two paragraphs, to quiet his
alleged title to the property in controversy. The plain-
tiffs answered appellant's cross-complaint by denying
the same. At this point, the plaintiffs filed the third
paragraph of complaint; thereupon appellant filed a third
paragraph of cross-complaint against all the appellees.
These were answered by general denial. The cause be-
ing at issue, it was submitted to the court for trial with-
out a jury.

Afterwards the court made a finding for the appellant
for all the lands not claimed by the appellees; for the
Kirbys, Hamilton and Heinsohn for the land in dispute,
being, as found by the court, a strip off the east side of
appellant's land, $8\frac{84}{100}$ feet wide east and west and ex-
tending from the south line of Adams street, in the city
of Muncie, south to the north line of the C., C., C. & I.
R. R., and against the appellant and all others claiming
any interest therein.

The appellant then moved for a new trial, and at the
next term the court refused the same, to which ruling
he excepted. The court then rendered a judgment in
accordance with the finding. The appellant afterwards
was granted a new trial as of right. Upon affidavit and
motion, a change of judge was had, and the cause was
again tried, resulting in a finding for the appellant for
all the land not claimed by the appellees—for the Kir-
bys, Hamilton, and Heinsohn for the land in dispute,
being a strip eight and $\frac{89}{100}$ feet wide east and west, and
extending from the south line of Adams street, in the

city of Muncie, south to the north line of the railroad track of the C., C., C. & I. R. R. The court refused a new trial, to which the appellant excepted, and rendered final judgment in accordance with the finding. The appellant has assigned two errors. First, the court erred in overruling appellant's motion for a new trial. Second, the court erred in rendering judgment in favor of the plaintiffs and against the appellant for the costs of suit, or any costs at all.

At the date of the deed from Thomas Kirby to the Reids he was the owner of a tract of land bounded on the north by what is now Adams street, in Muncie; on the west by the half section line, on the south by the track of said railway, and on the east by what is now Beacon street. On the first day of October, 1850, Thomas Kirby conveyed a part of this tract to appellant, John S. Reid, and others, by the following description: "Beginning on the line dividing the northeast quarter of section 15, township 20, range 10 east, at a point ranging with the south line of Adams street, Muncie; thence south with said quarter section line to the north line of the 'railroad track;' thence eastwardly far enough to make three acres by a line from thence north to a point running with said street as aforesaid, and therewith westwardly to the place of beginning."

The controversy in this case arises concerning the starting point of this description and the terminus of the line on the south, designated by the words "north line of the railroad track." The appellant, Reid, claims that the starting point is in the half section line at a point "ranging" with the south line of Adams street, as it then was, which he insists was, at the time, but forty-five feet wide; that Adams street then extended no farther east than Madison street; that Coffeen's addition had been platted about one year prior to this, and the plat had

been recorded, but there was no Adams street visible east of Madison street. In this addition Adams street was platted sixty feet in width.

The court below decided that the starting point described in said deed is at the south line of this street, as laid out in this addition.

The next point of controversy is concerning the southern boundary, or as to the meaning intended by the words "the north line of the railroad track." The appellant claims that the southern boundary is the north line of the right of way of the railroad company. The court decided that the southern boundary is the north rail of the track.

It seems the question presented is one of law, arising upon the language employed in the deed. If the trial judge was right in holding there was no ambiguity in the language of the deed of Thomas Kirby to John S. Reid and his co-grantees, that ends the entire controversy. Such language would then fix the rights of the parties. Here the subject for investigation was, did an ambiguity exist in the description? It is appellant's claim, as we understand it, that the range which was to locate the north line of the disputed tract was with a fixed line of a street extending westward from Madison street as the starting point, and not the south line of the same street running eastward from Madison street.

The contention grew out of the fact that prior to January 2d, 1850, the east boundary line of Muncie was Madison street, running north and south; and that in the town, as then existing, Adams street extending east and west, was forty-five feet in width; and that after January 2d, 1850, in Coffeen's addition and extension, eastward of the town of Muncie to Hackley street, as shown on the plat, Adams street was projected eastward to Hackley street, and through the addition 60 feet wide, instead of

45 feet wide, as in the old town. East of Hackley street, which is located along the line dividing the northeast and northwest quarters of section 15, and entirely outside the town limits, lay the lands of Thomas Kirby, at the date of the deed containing the alleged ambiguous description.

When this deed was made, Coffeen's addition lay between the land conveyed and Madison street, where Adams street ended in the old town, twelve hundred feet from the quarter-section line. Its plat had been of record nearly a year. It had become as much a part of the town as any other portion, and its street, lines, and lots as visible, certain and fixed as the lines and surveys of the public lands, or the exterior limit of any survey which is merely an imaginary course or direction from point to point and nowhere visible. The line of Adams street in Muncie, at the date of the deed, was as definite as any such line could be.

It is presumed that a court construing a deed which made the south line of a street in the recorded plat of a town a starting point, would take the point to be the one found on the record provided by law, which was in existence at the time. No doubt the court took the place and position of the parties and the attending circumstances and conditions existing when the deed was made, and, as a result, the experiment is against appellant.

Tracing the description, "commencing on the line between the northeast and the northwest quarter of section 15, at a point 'ranging' with the south line of Adams street," it would seem the word "ranging" was used naturally because the exact location of the south surveyed line of Adams street was doubtless difficult of exact location.

It is reasonable to suppose the grantor knew he could not fix a boundary line in the public streets, because he

could not extend the lines of his premises into the known territory of another's land. It also seems that he did not want to reduce Adams street from 60 to 45 feet wide, as he had then in contemplation an addition to Muncie east of Coffeen's, into and through which said street would be projected, and which he afterwards laid out, platted and dedicated with Adams street, 60 feet wide. He could not have had in contemplation his addition to Muncie, extending Adams with other streets, the location of the appellant's north boundary fifteen feet in the street for the length of two or three hundred feet, in the identical space he intended for a projection of that very street.

Had Mr. Kirby intended 45 feet as the width of Adams street in making his description, he would have done an unjust and dishonest act in afterwards cutting the appellant's line off 15 feet by platting Adams street 60 feet wide in dedicating his addition to the town.

Appellant's learned counsel say: "No line was visible as the south line of 'Adams street' till the eye reached Madison street."

In this we think they are mistaken. Adams street was "visible," if at all, to the parties, just where its line was marked and indicated by the Coffeen plat—at its intersection of the line between the northeast and northwest quarters of section 15. The fact that the plat of Coffeen's addition had been recorded before the deed was made, was held by the court to make Adams street a fixed monument, of which the parties had notice, and the language of the deed had reference thereto.

Appellant, in support of his theory, relies upon the case of *Cleveland* v. *Obenchain*, 107 Ind. 591, in which it is said: "Where land is described as bounded by an existing road or street, it is to be construed as referring to one actually opened and in use by the public."

Counsel argue that Adams street, at Madison street, was in the minds of the parties in describing the disputed lands. If so, it could not have formed one of the boundaries of the land sold 1,200 feet distant, between which and Adams street, Coffeen's addition lay. The authority cited is that where a road or a street is a boundary, the line of the street or road as actually used, governs. This doctrine is applicable to a case where there is a difference between a highway as used and as laid out. We do not feel warranted in overthrowing the court's statement that this recorded plat constituted notice to all persons. Its dedication, record, etc., made Adams street as much a fixed monument as the lines of any lot in the addition. If it had been the intention or purpose to make the south line of Adams street, where it joined Madison, the north line of the land conveyed, it could easily have been said, "commencing at a point in the line separating the two quarter sections of land intersected by a right line projected eastward from the south line of Madison street in Muncie."

The learned counsel for the appellant say it is a cardinal rule that when two or more monuments will answer the call in a deed, the court will endeavor to ascertain which was meant.

The rule is correctly stated, but we think this case does not come within its meaning. Here Adams street was existent when the deed was made as a lawful monument, and so identified that the court was bound to respect it. There could be no confusion where one was present perfectly filling the call, and the alleged monument is a long distance away, and not even on adjoining or contiguous territory. When anything exists to meet the call an ambiguity can not be present. If, when this deed was executed, Coffeen's addition and plat had not been annexed to the town bearing Adams street upon it,

its width specified, and the language of the deed still had been "ranging with the south line of Adams street in Muncie," it would be proper to seek the nearest point in the south line of said street, and there would be a valid reason in appellant's contention.   Courts can not find ambiguities where none exist.

"A written instrument is not ambiguous or uncertain because an * * * uninformed person may be unable to interpret it.   It is ambiguous only when found to be of uncertain meaning by persons of competent skill and information."   1 Greenl. Ev., section 298.

There being but one description of land in the deed in controversy, there is no reason to invoke the rule in *Casper* v. *Jamison*, 120 Ind. 58.

In cases arising out of written contracts or instruments, it is always for the court to construe the language and make the interpretation, and it is for the purpose of informing the court's mind, when it thinks there is an ambiguity in the instrument, that evidence is heard as to the situation of the parties, the surroundings, etc., in order to construe it and lay down the rule concerning the party's rights thereunder.

In *Seavey* v. *Shurick*, 110 Ind. 494 (497), it was said: "Where words of ordinary signification are found in a contract, it is for the court to give an interpretation to such words, as well as to the whole contract.   It is only where a word or phrase as used in a particular trade or calling has a meaning peculiar to such trade, and different from the ordinary sense in which it is used, that evidence may be heard to explain the use of the word."

A leading case in this State on the subject of the admissibility of evidence *dehors* the instrument to explain it, is *Harris* v. *Doe, on Demise*, 4 Blackf. 369, and the test there stated is: "When such an instrument * is a grant * and is so equivocally expressed as to render it doubtful

to what object it refers, or it is evident a mistake has been made  *  as to boundaries, resort may be had'' to parol evidence.

On the contrary, where there is no equivocation in the language of the description, and there are present, objects, monuments, lines, streets or places answering the call in the deed, no ambiguity exists, and the rule applies that the effect of a written instrument can not be varied by extrinsic evidence.    *Durland* v. *Pitcairn,* 51 Ind. 444; *Symmes* v. *Brown,* 13 Ind. 318.

As to the contention that there is a second ambiguity in the description of the land conveyed, in the words fixing the south end of the west line of the tract, such point being written ''the north line of the railroad track,'' the court probably thought the language was plain, and indicated a fixed, well known, and located point.

The evidence is, that in October, 1850, the ''track'' of this railroad itself was staked and largely graded and made ready for the iron rails, and the right of way eighty feet wide was cut out of the woods.    If the grantor and grantee intended the north line of the right of way as a boundary or monument, they could have employed an appropriate term to express the purpose.    In view of the fact that in every railroad charter passed by the Legislature of this State prior to the general railroad law, also in the general law and every act since, the words ''railroad track'' and ''railroad right of way'' have separate, distinctive meanings, it is too late to argue that they could be convertible terms.

''In the absence of ambiguity, no exposition shall be made which is opposed to the express words of the instrument.''    Broom's Legal Maxims (6th ed.), 456.

''Where the words of any written instrument are free from ambiguity in themselves, and where external circumstances do not create any doubt  *  such instrument is

always to be construed according to the strict, plain, common meaning of the words themselves; and that, in such case, evidence *dehors* the instrument, for the purpose of explaining it according to the surmised or alleged intention of the parties * * * is inadmissible." *Shore v. Wilson*, 5 Scott, N. R. 958 (1037); Broom's Legal Maxims (6th Am. ed.), 457.

It seems from the record, that the railroad company in fact never did have or acquire, except by user, any right of way from Thomas Kirby through the lands of which those in the deed were a part; and until it had secured a definite right of way, he had held and could convey to the rail or edge of the track as laid out. All law writers and courts preserve a clear distinction between the terms "right of way" and "railroad track." Mills Em. Dom. (2d ed.), section 211, says: "There is a vast difference between the location of a right of way and the location of a track on a right of way."

In *Boston, etc., R. R. Co.* v. *President, etc.*, 52 N. Y. 510, the court say, in construing a statute authorizing railroad tracks to be crossed by streets without compensation: "Grounds upon which tracks are laid for storing cars, or exclusively for making up trains, are not embraced in the term 'track,'" and the term should be limited to the track for public traffic, whether one or more tracks, what may be fairly regarded as the roadway. In the Cent. Dictionary, railroad track is defined thus: "The two continuous lines of rails on which railway cars run, forming, together with the ties, ballast and switches, etc., the permanent way."

It will be observed, by reference to the Kirby deed, under which the appellant disputes the claim of the Kirbys, Hamilton and Heinsohn, that it was made to Joseph A. Reid, John S. Reid, William T. Right and Benjamin F. Reid. Later on, in 1854, Wright, one of the grant-

ees, sold and conveyed to the appellant his interest in the original purchase, by the same description, to "north line of the railroad track," referring to the Kirby deed for more particular description.

In 1868 another original grantee from Kirby sold to appellant his interest, and conveyed the same by a like description.

It seems by the deed of Joseph A. Reid to John S. Reid, that the defendant treated Adams street, in Coffeen's addition, as "in the town of Muncie," and "sixty" feet in width.

In 1854, by the deed of William T. Wright and others, the appellant took their interest in the same tract. The meaning of the deed in controversy is to be determined by the construction put upon it by the parties, and what that construction was is a question of the weight of the evidence to be determined by the trial court. We think the record presents no question challenging the judgment. No motion was made in the court below to modify or change it, nor was any exception taken to its form. *Jemison* v. *Walsh*, 30 Ind. 167; *Smith* v. *Dodds*, 35 Ind. 452; *Pierce* v. *Wilson*, 48 Ind. 298; *Richardson* v. *Howk*, 45 Ind. 451.

We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

Filed June 7, 1894.