SIDNEY G. deKAY ET UX. vs. THE SHOREHAVEN
REALTY COMPANY.

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

An appeal from the denial of a motion to correct a finding is defective where the grounds upon which the corrections are claimed do not appear either in the motion or in the reasons of appeal.

This court cannot retry facts by considering and weighing the evidence; that function falls within the exclusive province of the trial court.

A finding will not be corrected as to details which are unnecessary for the full presentation of the claims of law urged by an appellant.

In order to warrant the reformation of an instrument on the ground of mutual mistake, the mistake must have been common to both parties, and by reason of it, both must have done what neither intended; and while, as in all civil actions, a plaintiff seeking relief is bound only to establish his case by a fair preponderance of the evidence, nevertheless the public importance of affording permanence and security to contracts which have been solemnly and deliberately reduced to writing, requires that his proof be clear, substantial and convincing.

The plaintiffs were about to purchase an island from the defendant and, in order to secure a location for a garage, also negotiated for the acquisition of a small tract of land on the adjacent mainland at a point where a private roadway joined the wooden bridge which led to the island. This tract was surveyed by the defendant's engineer, a map was submitted to the plaintiffs, and a particular description of it was inserted in the written contract executed by the parties and in the deed by which title was subsequently transferred to the plaintiffs; but after the plaintiffs took possession, they discovered that the tract thus conveyed was so situated with reference to the junction of the bridge and roadway that it was impracticable for the use intended because the overhang of the bridge upon the roadway was such that it did not leave sufficient space for access to the tract by motor vehicle. The defendant promptly and adequately remedied this defect by altering the bridge and roadway, but the plaintiffs, unsatisfied with these arrangements, brought the present action for reformation of the deed on the ground that there had been a mutual mistake as to the description of the property. Held that the plaintiffs were not entitled to the relief demanded, since the

mistake of the parties was not as to the description of the property, but as to the effect of the location of the bridge and roadway upon its intended use; and that the plaintiffs' remedy, if any, would have been an action to compel the defendant to do what it had already done of its own volition, viz., to relocate the bridge and roadway.

When the location of real estate is described in a deed with reference to a highway, the parties will be presumed, in the absence of any evidence to the contrary, to have intended the then apparent and traveled highway as distinguished from the highway as it exists of record or by actual survey; but where, as in the present case, the parties have before them a map containing an actual survey, the presumption does not apply.

Rights of way of necessity will be held to exist when the necessity clearly appears.

Argued January 19th—decided February 23d, 1926.

ACTION for the reformation of a deed of real estate on the ground of mutual mistake, brought to the Superior Court in Fairfield County and tried to the court, *Avery, J.;* judgment for defendant, and appeal by plaintiffs. *No error.*

The complaint alleges a deed given by defendant to plaintiffs, accompanied by a map, referred to in the deed and made a part thereof, both of which are annexed to and made part of the complaint and designated as Exhibits A and B.

The trial court rendered judgment for the defendant, and found facts as follows: Prior to September 4th, 1923, the defendant was the owner of a certain island, known as Sprite Island, situated in the town of Westport, Connecticut, containing seven and four tenths acres, more or less, and having a dwelling-house and buildings thereon, and the same was in the hands of a real-estate agent for sale, and the agent called the attention of plaintiffs to the property, and a meeting was arranged between Sidney G. deKay and Ray L. Skofield, agent for the defendant, and at this meeting the matter of the purchase and sale of the island was discussed, and deKay requested defendant to include with

the sale of the island a small piece of land on the mainland to be used as a boat-landing and another piece of land on the mainland to be used for a garage; and Skofield sketched on the back of a menu card the location of the two parcels of land to be used for the purposes aforesaid. Thereafter the defendant caused its engineers to prepare a map, particularly describing the two parcels of land to be used for boat-landing and garage purposes, and on September 4th, 1923, the plaintiff Sidney G. deKay and the defendant entered into the written contract for the purchase of the island and of the two parcels of land to be used for the purposes hereinbefore mentioned, which contract is referred to and made a part of the finding and marked "Defendant's Exhibit 1". At the time the contract was executed, a copy of the map prepared by the engineers was delivered to deKay, and a copy of this map is annexed to and made a part of the finding and marked "Exhibit 2". Thereafter the defendant caused to be prepared the deed and the mortgage mentioned in the contract, and on or about September 24th, 1923, copies of deed and mortgage were forwarded by mail to deKay for examination, and the same were duly received by him. At the request of deKay, the conveyance of the property was made to deKay and his wife, Helen M. deKay, instead of to deKay alone, as provided in and by the contract. "7. Said deed conformed in all respects to said contract and to said map, 'Defendant's Exhibits 1 and 2.' 8. The language of said contract and the description of said property therein contained and the language of said warranty deed and the language therein contained is clear and unambiguous."

The description of the tracts A and B, as referred to by the court in the finding, are as follows:

"Parcel A: That certain tract or parcel of land, situated at Shorehaven, so-called, in the Third Taxing

District of the City of Norwalk, commencing at a point on the southeasterly side of Shorehaven Road on Half Mile Island section, said point being the intersection of said southeasterly side of Shorehaven road with a line running at right angles (90°) to the Shorehaven base line from a point upon a straight line production of said base line 550 feet northeasterly from base monument A; from said starting point running southeasterly along other land of said The Shorehaven Realty Company upon a straight line continuation of the above mentioned right angle line for a distance of about 30 feet to mean high water, thence running northerly along high water line of Long Island Sound for a distance of about 33 feet, to Shorehaven road; thence running southwesterly along the southeasterly side of said Shorehaven road for a distance of about 22 feet to point or place of beginning.

"Parcel B: that certain tract or parcel of land, situated at Shorehaven, so-called, in the Third Taxing District of the City of Norwalk, commencing at a point on the northwesterly side of Shorehaven road on Half Mile Island section, said point being the intersection of the said northwesterly side of Shorehaven Road with a line running at right angles (90°) to the Shorehaven base line from a point upon a straight line production of said base line 563 feet northeasterly from base monument A; from said starting point running northwesterly along land of the said The Shorehaven Realty Company upon a line at right angles with the northwesterly side of a wooden bridge connecting said Half Mile Island with Canfield Island, for a distance of 110 feet thence running northeasterly along other land of said The Shorehaven Realty Company and at right angles to last mentioned line for a distance of about 23 feet to mean high water line, thence southeasterly and southerly along high water line on a creek to the said

northwesterly side of Shorehaven road, thence along said northwesterly side of Shorehaven road for a distance of about 25 feet to point or place of beginning.

"All distances in the above descriptions mentioned as 'about' are scaled distances to high water line as located in 1919 and on account of the constantly changing shore line must be considered as approximate only."

In the complaint plaintiffs claim that the deed should be corrected and amended by substituting the figures 520 for 550 on the Shorehaven base line and the figures 520 for 563 on said line wherever said figures are used in said deed and map.

The finding of the court continues as follows: It is further found that the plaintiff Sidney G. deKay is a lawyer by profession, practicing in the City of New York, and an expert reader of maps; that the contract was executed at the residence of Skofield, and at the time of its execution and just prior to the actual signing thereof, there were written into the contract the words "together with any riparian or littoral rights which the seller has or may have in the beaches lying in front of the lands hereby conveyed." "11. Said language was embodied in said contract and subsequently in the deed because the boundary line as set forth in the deed was 'mean high water' and the said Sidney G. deKay desired that any shore or littoral rights extending beyond mean high water should attach to the land conveyed by the defendant to said deKay."

It is also found that there was written into the contract just prior to its execution, the following words: "the intent being that no unsightly building be erected thereon and the cost shall not be required to exceed seven hundred dollars"; and the purpose of this language was that the defendant could not require the plaintiffs to expend more than $700 for the erection of

a private garage or private boathouse, and this sum related only to the cost of the building and did not contemplate or include the cost of filling or grading, nor did it limit the amount of money which the plaintiffs might expend on any such building. ' Whatever was done in connection with changing and executing the contract was done at the residence of Skofield; and deKay and Skofield did not visit the two parcels of land described in the contract and deed as parcels A and B, nor did Skofield on the ground point out the bounds of the property to deKay. After the deed had been executed and delivered, monuments were set, marking the lines of the two parcels A and B, and thereupon deKay complained to Skofield that he did not have room enough for a garage and driveway, and because of the then location of the bridge shown on the map, Exhibit 2, which left an opening of about eight feet as an approach to parcel B before entering on the bridge itself, Skofield, as a matter of good will and because he wished to be on good terms with deKay, who was to be his neighbor, offered to convey to deKay an additional ten feet of land, which deKay refused to accept. Thereafter the defendant shortened the bridge at its westerly end and filled in the roadway, known as the Shorehaven Road, for a distance of about fourteen feet, so that there is now a direct opening of about twenty-two feet from the road to the parcel of land marked parcel B.

The court further finds that, since the land was conveyed to the plaintiffs, there has been, by the action of the winds and tides, an accretion to parcel A and also to parcel B, as indicated on the map, which has added several feet along the shore to each of these parcels of land; that materials have washed up on the shore carried by tides in excess of mean high water to such extent that certain of the monuments marking the

bounds of the parcels A and B have been covered by
this material, and to uncover certain of the monuments
it was necessary to dig away this material. "17. The
evidence of the witnesses was conflicting and is not
sufficiently clear, substantial and convincing as to
show any mutual mistake in connection with the con-
tract, the map, or deed of the property in said several
instruments described."

The court also finds that both the contract and the
signed deed were signed by Ray L. Skofield as treas-
urer, described in the contract also as the agent for
the defendant; that the defendant is a closely held cor-
poration, and has for its officers Mary Clark Skofield,
the wife of Ray L. Skofield, as its president, and Ray
L. Skofield, as its treasurer; that all matters pertain-
ing to the corporation have been handled for years
entirely by Skofield, and Mrs. Skofield leaves matters
entirely in his hands; that all negotiations, except
those conducted by the real-estate agent, both before
and after the passing of the title to the parcels A and
B, were conducted by Skofield, usually in his individ-
ual name; that when the contract was drafted there
was no clause therein specifically deeding to the plain-
tiffs the title of the defendant in the beaches lying
in front of the lands conveyed; that on the date of
the signing of the contract Skofield, in his own hand-
writing, included the clause in regard to the beaches;
that this clause was inserted at the request of deKay;
that the land has made up considerably since 1919,
and the high-water mark has receded since that time;
that up until the time of the passing of the title and
for more than thirty days thereafter, there were no
artificial monuments showing the location of the prop-
erty.

The court also finds that there was a natural monu-
ment in the form of a tree twenty-five feet from the

end of the bridge on parcel B; also that there was a natural monument in the form of a tree eighty feet back from the Shorehaven Road on parcel B; that neither the plaintiffs nor the defendant knew the exact location where the property was to be, except that there was to be about twenty-five feet along the Shorehaven Road for a garage on parcel B, and twenty-two feet along that road for an entrance to a dock or bridge on parcel A; that Skofield stated in writing that he did not realize that the monuments on parcel B would come so near the end of the bridge as they did; that Skofield stated in writing that there was not sufficient room for a driveway to the garage, and that it was the intent of the parties that the plaintiffs should have a driveway to the garage as well as room for a garage; that Skofield stated that prior to the placing of the artificial monuments he did not visualize the bridge as coming as far over the land as it does and the defendant thereafter shortened the bridge so as to provide an entrance as set forth heretofore; that it was the intent of the parties that the plaintiffs should have land suitable for the erection of a garage not to exceed in cost $700; and that the Shorehaven road is a private road and must be taken as actually constructed and not as laid out.

The plaintiffs made a motion to correct the finding as follows, by striking out certain paragraphs and adding others, which motion was denied.

Plaintiffs appealed for the following reasons: (1) The court erred in finding that the deed conveyed the property intended to be conveyed. (2) The court erred in finding that, although at the time of the execution and delivery of the deed the plaintiffs had received only eight feet instead of about twenty-five feet on the Shorehaven Road, the action of the defendant in altering the bridge and increasing the en-

trance to about eighteen feet actually conveyed the premises intended and bargained for by the parties. (3) The court erred in ruling that there was not a mutual mistake common to both parties. (4) The court erred in placing an unreasonable construction on the words in the deed "along the Shorehaven Road." (5) The court erred in holding that the deed conveyed the property agreed upon, and in not giving full force and effect to the purposes for which said land was bought and to be used; and (6) also in refusing to correct the finding as requested.

Further facts, derived from the exhibits, appear in the opinion.

A copy of the map, Exhibit B (printed on page 45) which is "to be filed and made a part of this conveyance," as stated in the deed, Exhibit A, is included in this opinion. It contains all of the lines as laid down on the original, but for want of space the title of the map, the certificate of the surveyor, and the notation of scale are not placed upon the copy. These items are as follows: "Map showing parcels on Half Mile Island to be deeded with Sprite Island and owned by The Shorehaven Realty Company, Norwalk, Conn., Aug. 1923. Scale 1"=30'. I hereby certify this map to be substantially correct."

*Joseph G. Shapiro,* and *Sidney G. deKay* of New York City, for the appellants (plaintiffs).

*William F. Tammany,* for the appellee (defendant).

KEELER, J. In challenging the correctness of the finding of the trial court, the plaintiffs have annexed to their appeal a transcript of the entire evidence in aid of their claimed corrections, and also made a motion to correct addresssed to the trial court. No reasons for correction appear in this motion, nor do any appear

.deKay *v.* Shorehaven Realty Co.

LONG   ISLAND   SOUND

Approximate Mean High Water Line, 1919

THE SHOREHAVEN
REALTY CO.

WOODEN   BRIDGE

℄ Bridge

SHOREHAVEN ROAD

THE SHOREHAVEN REALTY CO.

Building line, southerly of which no building or part thereof shall be erected or maintained

PARCEL B

PARCEL A

CREEK

THE SHOREHAVEN REALTY CO.

Approximate Mean High Water Line, 1919

90°          90°

SHORE HAVEN BASE LINE
(PRODUCED)

STA 563      STA .550

NORTHERLY FROM BASE MON. A

See Shorehaven Map (Half mile Island Section)

in the reasons of appeal. In some form the reasons for correction should appear. *DeFeo* v. *Hindinger,* 98 Conn. 578, 581, 120 Atl. 314. Passing over, however, this defect of form, we find from plaintiffs' brief and argument that the reasons for correction consist in considerations of the weight of evidence, either as to actual facts proved or inferences therefrom. This practically is asking us to retry the cause, which we cannot do. The evidence is throughout contradictory. Where this is not the case, the corrections desired are in some cases as to matters of which the trial court might have taken judicial notice and probably did so, and as to which this court might also so take notice. Many of the corrections sought are not necessary for the full presentation of the points of law which are made by plaintiffs. This is particularly true of the desired addition of the words "as established in 1919," after the words "mean high water mark," to the eleventh paragraph of the finding. This provision was inserted in the contract after it had been prepared, by the express desire of the plaintiff deKay, evidently to safeguard beyond question the littoral rights appurtenant to the property to be conveyed, and this result is attained as well without the interpolation desired as with it. The excision of paragraphs seven and eight is claimed; these are conclusions, and are to be tested by consideration of the map in connection with the contract and deed and such other facts as are set forth in the finding.

The motion to strike out paragraph seventeen amounts simply to a claim that the decision should have been the other way. So far as this finding is a direct finding of fact, it is not made without evidence, since it is a conclusion from the effect of the whole evidence, and its correction from that point of view involves a retrial of the cause upon its merits, which,

as we have above intimated, is the real aim of plaintiffs. If the finding be regarded as one of law, it stands unless contrary to and not supported by the various subordinate facts found.

In *Snelling* v. *Merritt,* 85 Conn. 83, 100, 81 Atl. 1039, we said: "To warrant the reformation of a contract on the ground of mutual mistake, the mistake must have been common to both parties, and it must appear that by reason of it both have done what neither intended, and the evidence should be clear, substantial, and convincing as to both these facts." This case has since been followed and cited in *Reiner* v. *Maier,* 96 Conn. 566, 567, 114 Atl. 657, and *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 Atl. 603.

That the trial judge followed this authority as his *ratio decidendi* of the cause, appears from his memorandum of decision, in which he quotes the passage above cited. The burden of proof to prove mutual mistake is on the plaintiff, and he sustains this burden by establishing his case by a fair preponderance of evidence, as in other civil cases; this standard never varies. Nevertheless, it is of such vital importance in the ordinary business life of the community that contracts reduced to writing, entered into by both parties with regard to that solemnity, should not lightly be disturbed, set aside and replaced, that the courts are solicitous that mutual mistakes shall be established only by the clear preponderance of evidence, and that in weighing the evidence the trial court should exercise great care in its consideration, and be satisfied that the proof is clear, substantial and convincing. And it is only when the trier is led by the observance of these conditions to a determination of the question of fair preponderance that his conclusion satisfies the requirements of law.

The plaintiffs' reasons of appeal do not so correspond with the groupings of the points in their brief that we may directly correlate them. The points in the brief are enforced not only by claims properly arising under the finding, but are mingled with claims upon the finding as if it had been corrected as desired, and also with portions of testimony pure and simple. We have therefore to cull out such claims as are properly claims of law under the finding as made, and relate them to the various assignments of error as appear in the reasons of appeal.

The first assignment of error is the holding of the trial court that the deed conveyed the property intended to be conveyed. The court has found, and an inspection of the exhibits made part of the finding of facts shows, that the deed follows the contract, both in regard to the wording of the instruments, Exhibit A and Exhibit B, taken in connection with defendant's Exhibits 1 and 2. In describing both tracts A and B, the words "Shorehaven Realty Company" are substituted for the word "seller" in the contract, and in the description of tract B, the word "northeasterly" in the contract is changed to "northwesterly" in the deed to correct an obvious clerical error. Otherwise the contract and deed agree.

It appears from the finding that deKay had the contract and map furnished therewith from September 4th, 1923; that there was forwarded to him by mail on or about September 24th, a copy of the deed; and that the latter was executed September 29th. He had for about three weeks a copy of the contract and map, and for three or four days a copy of the deed for comparison therewith. He was a lawyer and an expert reader of maps. It would appear that he had ample time to judge whether he was getting the land for which he bargained. There was no mutual mistake as to the

fact that the deed conveyed the property described in the contract. Hence it appears from what has just been said that the contention of the plaintiffs goes one step back and what they virtually claim is in effect a reformation of the contract, that is, that there was not inserted in the contract the description of the property intended to be conveyed as a result of the prior negotiation between the parties.

Plaintiffs sustain this claim upon two grounds: first, that the tract conveyed did not give the convenient access to the road which was clearly intended to be given to tract B, and so carry into effect the purpose of the contracting parties; and second, that as regards both tracts, the boundary lines do not actually carry the line adjacent to Shorehaven Road to the real road, and so that plaintiffs get no access thereto by the terms of the conveyance, and it could not have been the intent of the parties to convey this tract. Taking up the first claim just mentioned, it appears from the finding that after the execution and delivery of the deed deKay complained that as regards parcel B there was only eight feet on the road for an opening into the land for a drive to the contemplated garage. Defendant then offered to convey an additional strip ten feet wide further up the road, which offer deKay refused to accept. Defendant then shortened up the bridge and filled in a roadway for a distance of fourteen feet so that there was a direct opening of twenty-two feet from the road to the land. Neither of the parties knew the exact location of this property, tract B, upon the ground, except that there was to be about twenty-five feet along the Shorehaven Road, and that the tract was to be used for a garage, and Skofield did not realize that the monuments would come so near to the end of the bridge, and Skofield stated that the intent of the parties was that the plaintiffs should

have a driveway to the garage, and Skofield further
stated that he did not visualize the bridge as coming
so far over the land as it does, and hence shortened
the bridge to provide an entrance to the land. When
due weight is given to the considerations just men-
tioned, it by no means follows that there was any
mutual mistake as to the tract to be conveyed. There
was nothing in the admissions and conduct of de-
fendant from which the court might say that the
negotiation of the parties contemplated a bargain
for another, distinct tract. There was a mistake as
to the facilities afforded to the tract, having regard
to the purpose for which it was to be used. The
remedy of the plaintiffs was not that sought in the
present action, but some relief upon a proper case
upon the facts, if under all the circumstances attend-
ing the transaction such a case could be established,
to compel defendant to construct a proper road. And
the court finds that the defendant had remedied the
defect, had done just what probably it could have
been compelled to do, or to respond in damages per-
haps for not doing. At the time of the hearing it
stood in a position entirely equitable.

Passing to the plaintiffs' second ground, which is
that the tract B described in the contract and deed
does not so conform to the boundary lines as indicated
in the instruments and the maps accompanying the
same and made part thereof, as to make it reasonable
that the parties intended to convey such a tract. It
is claimed that the measurements indicated for the
boundary lines appearing on the map do not carry
the land sought to be conveyed to the line of Shore-
haven Road, in that this road is to be taken as
actually constructed and laid out. The court finds
that this is a correct statement of law, but does not
give it the decisive effect claimed by plaintiffs. The

conclusion of the court may have been based upon a holding that the plaintiffs had by the terms of the deed a right of way by necessity from the line of the road as laid out to its line as constructed, or that the filling up of the road subsequent to the passing of title obviated the effect of the rule, in that the way as laid out became coincident with the way constructed. We do not think that the rule of law above quoted is properly applicable in the instant case. This rule is recognized, and has been applied in this State in *Falls Village Water Power Co.* v. *Tibbetts,* 31 Conn. 165, 167, and in *Bristol Mfg. Co.* v. *Barnes,* 54 Conn. 53, 55, 5 Atl. 593. In the former case, decided in 1862, it appeared that the plaintiffs were in possession of land fronting on a road long used as a public highway, which crossed a tongue of land thrown open to the public and dedicated to public use, and that the western part of it was immediately occupied by the public as a highway, which highway was a part of the apparent highway running from Sharon to Sheffield; plaintiffs alleged a trespass by defendant, who in turn claimed that plaintiffs had encroached on the land originally dedicated. The court held that "in the absence of any evidence to the contrary, they [the parties to a certain deed] must be presumed to have intended the then apparent and traveled, and the only apparent and traveled highway between the points named, passing the land; and not a highway which existed of record, but had long been apparently abandoned by the public, and the existence and former use of which may not have been known to them." The same doctrine was applied, and the last-named case cited, in *Bristol Mfg. Co.* v. *Barnes, supra,* where a person conveyed a "horse shed on the west side of the north and south highway, westerly of said store, together with the land covered by the same." The plain-

tiff claimed that the land conveyed was restricted to the actual site covered by the shed, while defendant, a subsequent grantee, claimed that the real and legal highway line was west of the front of the shed (since demolished) and ran through it, and that he might take a plot thirty-six feet by eighteen feet (the dimensions of the shed) back from a line which a survey might show as the correct west line of the highway. The court held that there was conveyed by the deed only the land on which the shed actually stood, and that the parties to the deed mentioned contracted with reference to the apparent and actually used roadway.

In the opinion in the case first cited, the court places its adoption of the rule as resting upon the fact of "absence of any evidence to the contrary." It is very evident that in both of these cases the parties were acting in the absence of any evidence to the contrary, and, as the court remarks, that it is not to be supposed that the parties had anything else in mind. The exact opposite of this condition exists in the instant case. A map was furnished with the contract, a map was referred to and made part of the deed, and was to be filed therewith. It was an integral part of the instrument. This is stronger even than a reference to a public filed map. It is not for one moment to be supposed that the parties did not have the map and every line thereon in mind and in contemplation as defining the land conveyed. They were not contracting with reference to a bridge line, but with reference to a street line; there was abundant "evidence to the contrary" of any claim that they looked only to the visible objects appearing on the land and road. The rule referred to in the cases in other jurisdictions where it is upheld, is always applied with the presupposition that no fact appears to

negative such an application.  Cases in which the surveyed lines have been held to prevail, are *Reid* v. *Klein,* 138 Ind. 484, 37 N. E. 967; *Andreu* v. *Watkins,* 26 Fla. 390, 7 So. 876; and *Harriman* v. *Whitney,* 196 Mass. 466, 82 N. E. 671.  In discussing the rule which we are now considering, it is observed in 9 Corpus Juris, page 198:  "But it has been held that where the grant or conveyance refers to a map, the line of the way as actually surveyed is held to determine the boundary of the land."  See also 4 Thompson on Real Property, § 3214, p. 316.

But even if we adopt plaintiffs' claim that the extent of the bridge determines the street or road line and that on tract B the line one hundred and ten feet in length coming only to the surveyed line of the street does not reach the northerly street line, and that the' plaintiffs had conveyed to them an inaccessible tract and hence one not in contemplation of the parties, there would clearly arise a way of necessity over the land lying between the plotted line and the bridge line to get upon the road.  This is our application of elementary law universally recognized.  Counsel refer to the fact that implied grants of way are favored to a more limited degree than in most other States (citing *Whiting* v. *Gaylord,* 66 Conn. 337, 34 Atl. 85, approved in *Phoenix National Bank* v. *United States Security Trust Co.,* 100 Conn. 622, 636, 124 Atl. 540).  But ways of necessity are approved where the necessity clearly appears.  It has not been held in Connecticut that anyone is bound to accept a construction of a conveyance, which will render the conveyed tract accessible only by aircraft.

If, as is claimed by plaintiffs, there was a mistake mutual as regards the parties, with respect to the description of the land to be conveyed, then, since the parties must have agreed on some tract the boun-

daries of which correctly interpret their actual intent, the plaintiffs assumed the burden of showing what that tract actually was. This they attempt to do as set forth in the fourth paragraph of the complaint by amending the description "by substituting the figures 520 for 550 on the Shorehaven base line and the figures 520 for 563 on said line" wherever used in the deed. The proposed correction places the tract to be conveyed approximately thirty feet westerly of the tract described in the deed and located on Exhibit B, and necessitates a corresponding shifting of the line of mean high-water mark of 1919 to the westward, upon the claim that substantially all of the land easterly of the claimed high-water mark was beach formed by accretion between 1919 and 1923. The correct location of the mean high-water line of 1919 was the major feature of the cause as tried in the Superior Court. This location the trial court found in favor of the defendant as a question of fact, and there is nothing in the finding to show that this conclusion was illegal, unreasonable or illogical.

The discussion of the case as regards tract B disposes of the contentions of the parties as regards tract A, and the latter need no separate consideration.

There is no error.

In this opinion the other judges concurred.