## CHARLES PAPAS ET AL. *vs.* THE AETNA INSURANCE COMPANY.

Third Judicial District, Bridgeport, April Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued April 9th—decided May 9th, 1930.

*William B. Hennessy,* with whom was *John B. Greco,* for the appellants (plaintiffs).

*Charles J. Martin,* with whom, on the brief, was *Walton E. Cronan,* for the appellee (defendant).

BANKS, J.   This is an action upon a fire insurance policy executed by the defendant, bearing the date of October 3d, 1928, and purporting to insure the stock and fixtures of the plaintiffs in their place of business in Meriden against loss by fire for the term of one year from that date.   A fire occurred in the plaintiffs' store on October 29th, 1928, causing substantial loss of the property described in the policy, and the plaintiffs duly furnished the defendant with proof of their loss.   The defendant rejected the proof because of alleged fraudulent acts of the plaintiffs in the procurement of the policy.   The defendant alleged in its answer that on October 30th, subsequent to the fire, the plaintiff Papas with intent to defraud the defendant represented to the defendant's agent, Elliott, that through error he had failed to renew a policy on this property which expired on October 3d, 1928, and that he wished to renew this policy for an increased amount, dating it back to October 3d, 1928; that, in pursuance of a scheme to defraud the defendant, Papas concealed from Elliott the fact that a fire had occurred in the premises on October 29th, and the latter, relying upon his representations, issued the policy in suit on October 30th, 1928, but dating it back to October 3d, 1928.   In support of this defense the defendant offered the evidence of its agent Elliott and his son that the policy in suit was actually issued on October 30th, 1928, and certain records in the office of the agent Elliott, in that of the New England Insurance Exchange and in the home office of the defendant, which it claimed demonstrated that the policy could not have been written on October 3d.   The plaintiffs assign as error the rulings of the court admitting this documentary evidence.   The policy in suit was upon a printed form bearing the serial number 640, and the defendant offered the following proof of the date of its issue with reference to the date and

serial numbers of other policies issued at the Elliott agency immediately before and after the issue of this policy. These printed forms known as "agents' dailies" were furnished by the defendant company to its agent Elliott in triplicate, each set of three having the same serial number. In the regular course of business Elliott made three "dailies" bearing the same serial number, one of which was attached to the policy delivered to the assured, one was retained by him as his original record of the policy, and the third was mailed by him on October 30th to the New England Insurance Exchange in Hartford. That is an organization through which all "dailies" written by the several agents in a particular district pass for examination and correction. If found correct they are stamped with the date of their receipt and forwarded the same day to the home office of the company on whose behalf they are written. The triplicate of the "daily" of the policy in suit was identified by the stamp clerk of the Exchange as the paper received in that office and stamped as received on October 31st, 1928, and by the examiner in the home office of the defendant as received in that office and stamped as received on November 1st, 1928, and was offered and received in evidence as defendant's Exhibit 18.

The stamp clerk in the office of the Insurance Exchange also testified that she kept a record of the serial numbers of the policies as they came through the stamp office, and produced the record showing the order in which the serial numbers of policies written for the defendant by the Elliott agency were received in the stamp office, which showed that the policy numbered 640 was received in its regular sequence. This record was received in evidence as defendant's Exhibit 17. Elliott produced from his files "dailies" bearing serial numbers 632 to 639 inclusive, which bore dates run-

ning from September 21st, 1928, to October 24th, 1928, and "dailies" numbered 641 and 642, dated, respectively, October 30th and November 8th, 1928, which were offered and received in evidence for the purpose of proving that the true date of issue of the policy in suit, number 640, was October 30th, and these were marked defendant's Exhibits 6 to 15 inclusive.

The defendant also produced triplicate copies of the "dailies" serially numbered 632 to 639 inclusive, which Elliott testified had been sent to the home office through the stamp clerk in the usual course. The stamp clerk testified that they were stamped with the date received, and sent to the defendant's home office, and the defendant's general adjuster testified that they were received and stamped at the home office as of the date received. They were received in evidence for the same purpose, and marked as one Exhibit number 20.

Elliott testified that under the billing system used by him in the regular course of his business he made out an invoice of the premium on this policy in triplicate, one copy of which was given to the plaintiff Papas, one filed for record in connection with renewal dates, and the third used as a ledger record of partial payments on account of premiums. The plaintiffs offered in evidence the original invoice given to Papas which bore on its face a credit of a payment of $30 upon the premium under date of October 3d. The defendant produced a loose leaf binder of accounts receivable containing a ledger sheet which was the triplicate copy of the plaintiffs' invoice, and which contained on its back in a space lined off for the entry of payments, an entry of a credit of $30 under the date of October 30th. This copy of the invoice was received in evidence as defendant's Exhibit 5.

Elliott produced a loose leaf cash book and the defendant offered in evidence the page from the book

showing the entries of cash receipts in order for the month of October which was received in evidence as defendant's Exhibit 16.

Exhibits 5 and 16, which were entries in Elliott's books of account, were objected to as not being entries in shop books made in the regular course of business because they were upon loose sheets of paper. They were not primarily admissible as entries in shop books under the statute (General Statutes, § 6017) since this is not an action in book debt (*Katsonas* v. *Sutherland Building & Contracting Co.*, 104 Conn. 54, 68, 132 Atl. 533), and were not offered for that purpose. The other documentary evidence thus offered and received was objected to generally as being incompetent and irrelevant.

The parties were at issue as to the date when the policy of insurance upon the plaintiffs' property was written, whether upon October 3d, as claimed by the plaintiffs, or on October 30th, as claimed by the defendant. The defendant's agent Elliott and his son testified that it was written in their office and delivered to the plaintiff Papas on October 30th. The date of the issuance of the policy was the fact in issue. Any fact which, taken by itself or in connection with other facts, rendered probable the fact that the policy was issued on October 30th was relevant to that issue and admissible in evidence unless excluded by some positive rule of law. The proof offered by the defendant of the system under which its policies were issued from the office of its agent, and reported through the office of the New England Insurance Exchange to its home office, together with the documentary proof recording the course of the so-called "daily" with its serial number, and showing the sequence in regular order of policies bearing serial numbers just above and below that of the policy in suit, tended strongly, if not conclusively, to fix the date of its

issue as being October 30th. Such proof logically tended to aid the trier in the determination of the issue, and was clearly relevant to the question of the date when this policy was written. The plaintiffs in their appeal from the rulings admitting this evidence invoke the rule that a writing produced for the purpose of refreshing the present memory of a witness is not itself admissible in evidence, and the rule that parties are not permitted to make evidence for themselves by introducing statements made by them on a former occasion not inconsistent with their testimony upon the trial. Neither rule is applicable to the documentary evidence here in question. It does not appear from the finding that any of the evidence objected to was used to refresh the present recollection of any witness, nor that any of it was evidence of the past declaration of any witness in support of his testimony upon the trial such as to make it inadmissible in evidence under the rule relied on. As we pointed out in *Curtis* v. *Bradley,* 65 Conn. 99, 111, 112, 31 Atl. 591, it is immaterial that a critical analysis may impute to a document some element of a declaration. The writing may, by reason of the circumstances under which it was made, be a documentary witness to the fact the paper itself tends to prove, though it may also be in a certain sense a declaration. A memorandum of the details of a transaction relevant to the issue, shown to be correct and to have been made substantially at the time of the transaction by, or in the presence of, one who then had personal knowledge of such details and of the accuracy of the memorandum and who so testifies, is, in connection with his testimony, admissible as original evidence of such details. *Curtis* v. *Bradley, supra; Neff* v. *Neff,* 96 Conn. 273, 114 Atl. 126; *Katsonas* v. *Sutherland Building & Contracting Co.,* 104 Conn. 54, 132 Atl. 533; *Hawken* v. *Dailey,* 85 Conn. 16, 81 Atl. 1053; 2 Wigmore on Evidence (2d

Ed.) §§ 734, 754. It is admissible "because such memorandum is in itself evidence of a fact closely relevant, plainly material, and essential to a just trial, and because no principle of the law of evidence, or rule of public policy, justifies its exclusion." *Curtis* v. *Bradley, supra,* p. 114. "The record, verified and adopted, becomes a present evidentiary statement of the witness." 2 Wigmore on Evidence (2d Ed.) § 754. The various entries and records here in question come clearly within this rule. They were made at the time of the transaction in question and their accuracy is attested by the testimony of the various persons who made them. The records themselves, in connection with the testimony thus authenticating them, were admissible as original evidence of the relevant facts that the triplicate copy of the plaintiffs' policy was forwarded, stamped and received at the home office of the defendant in the proper sequence of its serial number and upon the dates shown, and that all the records and entries made in connection with the writing of the policy were made in such order, with relation to other entries and records, as they would have been made in the regular course of business if the actual date of the issuance of the policy was October 30th instead of October 3d.

Plaintiffs in their brief assume that the witness Elliott had, at the trial, present recollection and knowledge of the contents of the entry upon the triplicate copy of the invoice (Exhibit 5) and of the entry in the cash book (Exhibit 16) and contend that those entries were for that reason not admissible. The finding, to which we are confined in our consideration of these rulings, does not so state, and the evidence was not objected to upon that ground. *Katsonas* v. *Sutherland Building & Contracting Co., supra,* pp. 69, 70.

The plaintiffs' motion to set aside the verdict, and

for a new trial, was properly denied. Upon the evidence before them the jury could reasonably have reached no other conclusion than that the policy in suit was written after the fire and procured to be written by the fraudulent representations of the plaintiffs.

There is no error.

In this opinion the other judges concurred.