THE CORTICELLI SILK COMPANY *vs.* JACOB R. SLOSBERG
ET AL.

Second Judicial District, Norwich, April Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and MARVIN, Js.

In order to warrant the reformation of an instrument on the ground of mutual mistake, there should be clear, substantial and convincing evidence that the mistake was common to both parties and that, by reason of it, both did what neither intended.

In the present case, it appeared that after the parties were in accord as to the terms of the purchase by the defendant of a vacant strip of land adjoining the plaintiff's mill, they agreed to prepare the description in the deed from an old map which, unknown to both parties, included additional land upon which the plaintiff had constructed a valuable power-house for its mill, which neither party intended should be conveyed. *Held:*—

1. That the trial court erred in its conclusion that the parties intended to buy and sell the tract as shown on the map, which included the power-house.

2. That it also erred in refusing to reform the deed to accord with the original agreement between the parties. (*Two judges dissenting* on the ground that while the facts, as found, might justify a re-

Corticelli Silk Co. *v.* Slosberg.

scission, they did not present a proper case for reformation, since it did not appear that the minds of the parties had ever met as to the land to be conveyed.)

Argued April 29th—decided June 2d, 1924.

SUIT for the reformation of a deed of real estate because of an alleged mutual mistake of the parties, brought to and tried by the Superior Court in New London County, *Hinman, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error; judgment set aside and cause remanded with direction to enter judgment for the plaintiff.*

The complaint alleges, in substance, that the plaintiff was the owner of a tract of land in the town of Norwich upon a part of which its mill buildings were located; that the defendants were desirous of buying a portion of the vacant land lying between the plot on which plaintiff's mill buildings were located and other land of the defendants, and that by the mutual mistake of the plaintiff and defendants the tract as conveyed was described by measurements which included a portion of the plaintiff's mill buildings, which the plaintiff did not intend to sell and the defendants did not intend to buy; to wit, that the deed described a substantially rectangular tract whose northerly and southerly boundaries were about seventy-five feet in length, whereas the parties intended to buy and sell a tract whose northerly boundary was about seventy-five feet in length and whose southerly boundary was about sixty feet. The defendants' answer denies that any mistake was made in the description of the property conveyed.

On the finding, the material facts bearing on the issue of mutual mistake are substantially as follows: The plaintiff was the owner of a tract of land in Norwich bounded northerly by land of the Norwich and Worcester Railroad Company; easterly by land of the defendants; southerly by the Shetucket River, and westerly

by South Golden Street. On the westerly part of the tract the plaintiff owned and operated a silk mill. The easterly portion of the plaintiff's land was purchased from Armstrong and Smith in 1917, and described as seventy-five feet wide and about three hundred feet deep, the easterly and westerly lines being parallel, and as bounded northerly by land of the Norwich and Worcester Railroad Company and southerly by the Shetucket River. After this purchase the plaintiff built a new power-house, a large part of which extended upon the tract purchased from Armstrong and Smith. This power plant is a necessary part of the plaintiff's mill, without which it could not be operated, and the cost of removing it to a new location, together with the loss from cessation of business during such removal, would be $10,000.

The defendants owned the tract of land east of the Armstrong and Smith tract, and have carried on a part of their lumber business on it for several years. A number of weeks before the deed in controversy was executed, negotiations were commenced between the defendant Jacob R. Slosberg and the superintendent of the plaintiff's mill relative to the purchase by the defendants of a part of the Armstrong and Smith tract, and the matter was referred to J. P. T. Armstrong, the plaintiff's assistant treasurer, for his consideration, with the result that Armstrong told Slosberg he was authorized to sell a tract seventy-five feet in width adjoining defendants' land, except a fifteen-foot strip along the railroad on the north, for $10,000, upon certain conditions against building or piling merchandise higher than eight feet within fifteen feet of the westerly line of the tract to be sold, to protect the light of the plaintiff's mill buildings.

Slosberg accepted this proposition, and he produced a blue print of a map, which both parties believed to

be correct, purporting to show the plaintiff's original purchase, the Armstrong and Smith tract and the defendants' land, and the plaintiff's mill buildings. Both the parties believed that all the plaintiff's mill buildings were shown on the map, but it did not show the new power-house extending easterly upon the Armstrong and Smith tract. Armstrong sent the map to the plaintiff's attorney with instructions to draw the deed to the defendants describing the land as shown on the map as the land deeded by Armstrong and Smith in 1917, except the fifteen-foot strip on the north. The map showed the westerly line of the property to be conveyed as seventy-five feet from and parallel to the easterly line. The westerly line so shown on the map and described in the deed would and does run through the plaintiff's power-house so that it is almost entirely on the land conveyed by the deed, as drawn and delivered to the defendants.

The plaintiff did not know and Slosberg did not know that the power-house was on the tract he was negotiating for and neither party knew that it was included in the description of the deed, until Slosberg had the lines run by a surveyor, and then for the first time learned that the plaintiff's power-house was on the premises conveyed. When the plaintiff discovered that its power-house was on the land conveyed, it demanded that the deed be rectified so that the westerly line should be run from a point on the north boundary seventy-five feet from the defendants' land in such a direction as would exclude from the land conveyed the plaintiff's power-house and the overhang of its eaves, and upon the defendants' refusal to do so this action was instituted.

*Frank L. McGuire*, with whom was *Charles Hadlai Hull*, for the appellant (plaintiff).

*Jeremiah J. Desmond* and *Edmund W. Perkins,* for the appellees (defendants).

BEACH, J. The Superior Court has found that the parties intended to buy and sell the tract of land shown on a blue print of a map, which purported to delineate the boundaries and measurements of a vacant strip of land lying between the plaintiff's mill buildings on the west and the defendants' land on the east, and which appeared on the map to be seventy-five feet wide between parallel side lines.

Under ordinary circumstances such a finding made by the trial court would be well-nigh conclusive. On this record, however, it also appears from the finding that the negotiations were conducted with reference to a vacant tract of land which lay before the eyes of the parties; that the blue print was not produced or referred to, until after the parties had come to an agreement as to the terms of their bargain, and that both parties were mistaken in supposing that the blue print was a correct representation of one of the physical facts with reference to which they had contracted, to wit, the location of the plaintiff's power plant as related to the western boundary line of the tract shown on the blue print. In fact, the power plant had been extended easterly of that line after the map was made, and neither party was aware of the fact that the map was to that extent out of date and misleading. The result was that the westerly line of the tract sold, as it is described in the deed, is so located that it conveys substantially the whole of the plaintiff's powerhouse to the defendants. It seems quite clear from the subordinate facts found that the parties did not intend to sell or buy any part of the plaintiff's power plant. It is specifically found that the defendants did not at any time think they were buying or acquiring the en-

gine room and boiler house; and that neither the plaintiff nor Mr. Armstrong knew that any part of the plaintiff's engine room or boiler house was upon the land conveyed. From a wider point of view it is impossible, since the finding shows that the plaintiff was actuated by a desire to show a profit on the transaction, to suppose that the plaintiff consciously intended to sell the whole tract and the power plant for no more than the necessary cost of replacing the power plant.

If any further proof were necessary to show that the parties did not intend to buy or sell the plaintiff's power plant, it might be found in the deed itself, which makes no reference to any buildings on the tract conveyed, and also contains a covenant by the grantees not to build or to pile merchandise more than eight feet high within fifteen feet of the westerly line of the property conveyed, "nor in any way to diminish or obstruct the light of the grantor's mill on its adjoining property." Surely, the power plant was a part of the grantor's mill.

Indeed, we do not understand that the trial court imputes to the plaintiff any conscious intent to sell any of the land on which any part of its mill buildings stood, or to the defendants any conscious intent to buy any land covered by the plaintiff's mill buildings. The conclusion of the trial court was evidently based on the fact that after the bargain was made and the parties turned their attention to the business of reducing it to writing, they agreed that the deed should follow the lines and measurements shown on the blue print; and if that fact stood alone, the conclusion would follow. But it also appears from the finding that the agreement to follow the blue print was itself based on the mutual mistake of the parties in supposing that the map correctly represented the relation between the plaintiff's new power plant and the westerly line of the tract

which the parties had agreed to buy and sell. That being so, the agreement that the deed should follow the lines of the blue print does not in fact or in law express any new agreement, upon which the minds of the parties met, that the deed should include the power plant. After the deed was drawn the finding shows that the parties still understood that the power-house was not included in the grant.

The plaintiff has caused all the testimony to be printed in support of its motion to correct the finding, and an examination of the testimony reinforces the findings as to the essential fact that the tract bargained for was not intended by either party to include any part of the land occupied by the plaintiff's power plant. Irrespective of any correction of the finding, we are of opinion that the findings of subordinate facts clearly show that the parties did not intend to buy or sell any part of the land covered by the power plant, and that the agreement to follow the lines and measurements on the blue print was itself based upon the mutual mistake of the parties in supposing that the blue print correctly showed the outlines of the vacant tract which was in fact the subject-matter of their bargain. This brings the case within the rule as to mutual mistake laid down in *Snelling* v. *Merritt*, 85 Conn. 83, 100, 81 Atl. 1039: "To warrant . . . reformation . . . on the ground of mutual mistake, the mistake must have been common to both parties, and it must appear that . . . both have done what neither intended, and the evidence should be clear, substantial, and convincing as to both those facts." In this instance the findings of subordinate facts show clearly and convincingly that the real agreement of the parties was to buy and sell the vacant land between the plaintiff's mill buildings and the defendants' land, and that in so far as the deed includes the land covered by the plaintiff's power

Corticelli Silk Co. *v.* Slosberg.

plant, it fails to express the real agreement of the parties. To that extent the record makes out a good case for the reformation of the deed. The description of the westerly line in the deed makes one fact clear, namely, that the parties intended that the westerly line of the tract bargained for should be a straight line. The mutual mistake was in describing that line so that it included the plaintiff's power plant. That mistake should be corrected, and the deed reformed so as to effectuate the real agreement of the parties as disclosed by the finding, by drawing the westerly line of the tract conveyed in a straight line from a point on the northerly boundary line of the tract seventy-five feet distant from the defendants' land to a point on the Shetucket River which will exclude from the tract conveyed the plaintiff's power plant and the overhang of its eaves, and will include all the rest of the vacant tract lying between the defendants' land and the plaintiff's mill buildings. This reformation will result in the deed conveying a tract of land seventy-five feet wide on the north line and about sixty feet wide on the Shetucket River, including all of the vacant land between the plaintiff's mill buildings and the defendants' land which can be included by a straight westerly boundary line.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment reforming the deed in accordance with this opinion.

In this opinion WHEELER, C. J., and CURTIS, J., concurred.

KEELER, J. (dissenting). Believing that the finding shows that the minds of the parties never met as to the land to be conveyed, and presents a case for rescission and not for reformation, I must dissent.

In this opinion MARVIN, J., concurred.