NANCY LOPINTO *v.* FRANK C. HAINES, JR.

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 15—decision released December 8, 1981

*Robert R. Petrucelli,* for the appellant (plaintiff).

*Vincent M. Simko,* with whom, on the brief, was *Alice E. Harrington,* for the appellee (defendant).

ARTHUR H. HEALEY, J. The plaintiff's complaint in this action sought injunctive relief against the defendant restraining him from violating a restrictive covenant in a warranty deed executed by the plaintiff to the defendant. The deed conveyed title to a vacant lot in the city of Bridgeport.[1] The de-

---

[1] The complaint also sought damages. This relief, however, is not critical on this appeal.

fendant filed an answer and a counterclaim. The counterclaim was in three counts: the first count alleged that the restriction in the deed did not reflect the actual agreement between the parties; the second count alleged a scrivener's mistake; and the third count alleged financial obligations incurred and to be incurred by the defendant as a result of his reliance on the agreement as he understood it. The defendant also sought a reformation of the warranty deed and damages. After a court trial, the court, *Saden, J.*, found for the defendant on the complaint and on the first count of the counterclaim[2] upon which it ordered a reformation of the warranty deed. The plaintiff has appealed from the judgment rendered on the counterclaim ordering reformation of the deed.

The trial court's memorandum of decision discloses the following facts: The plaintiff owned two adjoining lots on Dande Street in Bridgeport. There was a two-family house on one lot (Lot 11) while the other lot (Lot 12) was vacant. The plaintiff did not live in this two-family house but leased both flats to tenants. One Alan Fischer had an option contract to purchase the vacant lot but never took title. The defendant, who was interested in buying Fischer's interest in the contract, after obtaining Fischer's consent, met with the plaintiff concerning the sale of the lot. At that meeting the plaintiff and the defendant discussed the terms of sale including the location of a house which the defendant intended to build on the lot.[3] On the next day, the plaintiff, whose command of the English

---

[2] The trial court also found that the defendant was not entitled to money damages under the third count of the counterclaim.

[3] This was the one and only meeting between the parties and it took place sometime in October, 1979.

language is "somewhat limited," called her attorney and told him the terms of the sale agreement arrived at between herself and the defendant at this meeting and instructed him to proceed with the sale. No written contract to sell was ever prepared and both parties were anxious to close title.

The plaintiff's attorney prepared a warranty deed with a clause stating "that [the] newly constructed dwelling will be placed at least 24 feet from adjoining premises" of the plaintiff, "being Lot No. 11, as shown on said map." [4] The closing[5] took place on October 15, 1979, and the deed was recorded on October 16, 1979.

The defendant poured the footings on October 24, 1979, and the walls on October 30, 1979. The court observed that the plaintiff claimed that she visited the site every day during this period, but did not call her attorney until November 2 to complain that the new house was "too close." The plaintiff instituted this action claiming injunctive relief on November 6, 1979.[6]

The trial court's memorandum of decision stated that the case "turns on the question whether there

[4] The warranty deed contained the following provisions: "As part consideration hereof, the grantee agrees that he will build no more than a two-family residence on said premises with no more than four (4) rooms in each apartment and that such newly constructed dwelling will be placed at least 24 feet from adjoining premises by the Grantor herein, being Lot No. 11 as shown on said map."

[5] There was no formal closing. At no time did the plaintiff and her attorney and the defendant and his attorney meet. It was agreed that the office of the defendant's attorney would provide the plaintiff's attorney with a check for the net purchase price and the warranty deed would, in turn, be given to the defendant's attorney. This was fully performed.

[6] The trial court's memorandum of decision pointed out that no injunction was issued because of an agreement between the parties that no further work would be performed by the defendant.

was a mutual mistake of the parties or a mistake by [the] plaintiff in describing to her attorney the location of the new house or by a misunderstanding of [the] defendant's attorney." As we have set out below, we do not believe that this correctly articulates the legal issue raised by this case.

The trial court found that the actual agreement between the parties fixed the distance between the existing and the new house. Pointing out that the plaintiff's testimony on this "vital question" was "ambiguous," the court found, as a fact, that in her previous agreement with Fischer,[7] the plaintiff had not required the new house to be built twenty-four feet from Lot 11, but, instead, "had her attorney employ language consonant with the oral agreement" that the defendant claims she subsequently made with him at their meeting. The court observed that the Fischer agreement, which both the plaintiff and defendant were familiar with at the time they reached their oral agreement, fixed the location of the house to be built "as far as possible from the [plaintiff's] existing house." Therefore, the court said that "[i]t is reasonable to infer that, with this in mind, the parties agreed on the location of the new house to be 24 feet from the adjoining *house*

_____

[7] On July 6, 1979, the plaintiff and Alan Fischer had entered into a written contract wherein she agreed to sell and convey to Fischer a building lot on Brooklawn Avenue in Bridgeport. In an "addendum" to that contract she gave Fischer an option to purchase the vacant lot which is the subject of this appeal and which she subsequently sold to the defendant Haines. The language in this "addendum" to which the trial court referred in its memorandum of decision states: "Further, Purchaser agrees that *he will build no more than a two family residence on said premises with no more than five rooms including two bedrooms in each apartment and that such newly constructed premises will be placed as far as possible from the Seller's existing house on Dande Street* but will in any event fully conform to the sideline zoning requirements." (Emphasis in original.)

rather than the lot." (Emphasis in original.) It concluded that on this basis, "as well as other facts found from the evidence . . . the language of the deed prepared by [the] plaintiff's attorney describing the location of the new house should be reformed to read that it shall be 'at least 24 feet from the adjoining house owned by the grantor.' "

The plaintiff claims the court erred: (1) in failing to apply the proper standard of proof "in concluding that there was a mutual mistake of the parties in describing in the Warranty Deed the location of the new house from the adjoining land," and (2) in relying upon the prior written contract between the plaintiff and Fischer (Fischer contract) to infer the intent of the parties to this action in reaching their agreement when the only purpose for admitting the Fischer contract into evidence was to impeach the plaintiff's credibility.

"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U.S. 373, 385, 20 S. Ct. 957, 44 L. Ed. 1108 [1900]; *Patalano* v. *Chabot,* 139 Conn. 356, 359, 94 A.2d 15 [1952]; *Home Owners' Loan Corporation* v. *Stevens,* 120 Conn. 6, 9, 179 A. 330 [1935]; 27 Am. Jur. 2d 555, Equity, § 33; 45 Am. Jur., Reformation of Instruments, 584 § 2, 621 § 62; 76 C.J.S. 375, Reformation of Instruments, § 30." *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn.

123, 126, 239 A.2d 519 (1968); see also *Rodie* v. *National Surety Corporation,* 143 Conn. 66, 69, 118 A.2d 908 (1955). We have held that this also applies to actions for reformation of a deed; *Patalano* v. *Chabot,* 139 Conn. 356, 359, 94 A.2d 15 (1952); *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.,* 136 Conn. 544, 548, 72 A.2d 482 (1950); *Home Owners' Loan Corporation* v. *Stevens,* 120 Conn. 6, 10, 179 A. 330 (1935); the function of which is "merely to pass title to land, pursuant to the agreement of the parties." *Patalano* v. *Chabot,* supra, 360; see also *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 409, 260 A.2d 573 (1969). "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result of mutual mistake." *George Backer Management Corporation* v. *Acme Quilting Co.,* 46 N.Y.2d 211, 219, 385 N.E.2d 1062 (1978). The remedy of reformation "is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction." (Citations omitted.) *Home Owners' Loan Corporation* v. *Stevens,* supra, 9–10; see Restatement Second, Contracts § 297 (Tentative Draft No. 10). In short, the mistake, being common to both parties, effects a result which neither intended. See, e.g., *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 374, 128 A. 33 (1925); *Snelling* v. *Merritt,* 85 Conn. 83, 100, 81 A. 1039 (1911).

There was no mutual mistake of that nature in this case. This is underscored by the express statement in the defendant's brief that he "claimed in the First Count of his Counterclaim that the deed was executed and recorded in its present form as the result of a mistake on *his* part coupled with inequitable conduct on the part of the Plaintiff." (Emphasis added.) This is the specific count of the counterclaim upon which the court found for the defendant.

We now turn to the question whether this case is one of a unilateral mistake coupled with actual or constructive fraud or inequitable conduct on the part of the plaintiff. See *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* supra. The defendant makes no claim of actual or constructive fraud, but does claim unilateral mistake coupled with inequitable conduct by the plaintiff.[8] "The burden of persuasion in an ordinary civil action is sustained if evidence 'induces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact in issue is true.' *Darrow* v. *Fleischner,* 117 Conn. 518, 520, 169 A. 197 [1933]; *Mead* v. *Husted,* 52 Conn. 53, 56–61 [1884]. In certain extraordinary circumstances a higher degree of belief has been required." *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 534, 368 A.2d 125 (1976). This case presents one "extraordinary circumstance" where that "higher degree of belief" is required.

The evolution of the equitable doctrine of reformation providing, as it does, relief where none was provided at law against an instrument secured by

---

[8] In oral argument, the defendant's counsel stated that he did not claim actual or constructive fraud.

fraud and mistake has properly been said to require "evidence of a very high order" to overcome what the New York Court of Appeals calls "the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties." *George Backer Management Corporation* v. *Acme Quilting Co.,* supra; see also 66 Am. Jur. 2d, Reformation of Instruments § 123; 6A Powell, Real Property (1980) § 894. We have stated the standard of proof for reformation in different ways but all with the same substantive thrust: " 'evidence should be clear, substantial and convincing. . . .' " *Corticelli Silk Co.* v. *Slosberg,* 101 Conn. 44, 50, 124 A. 818 (1924); *Reiner* v. *Maier,* 96 Conn. 566, 567, 114 A. 657 (1921); *Snelling* v. *Merritt,* supra, 100; see also *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* supra, 126–27 (convincing evidence).

The phrase "clear, substantial and convincing evidence" fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution.[9] See also *Dacey* v. *Connecticut Bar Assn.,* supra, 536–37. In cases such as this which require such a showing of proof, the burden of persuasion is sustained if the evidence "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." See *Dacey* v. *Con-*

---

[9] We consider the phrase "clear, substantial and convincing evidence" to embody the same substantive standard as the phrase "clear and convincing proof." See *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 536, 368 A.2d 125 (1976).

*necticut Bar Assn.*, supra, 537; see also McBaine, "Burden of Proof: Degrees of Belief," 32 Cal. L. Rev. 242, 246–47, 254, 262–64 (1944). This is the quality of the evidence required in cases of this type.

Where fraud is absent, "it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be *clear* so as to leave no room for doubt. *Bishop* v. *Clay Fire & Marine Co.*, 49 Conn. 167, 172 [1881]." (Emphasis added.) *Greenwich Contracting Co.* v. *Bonwit Construction Co.*, supra, 127. Even where there is no actual fraud, but merely such knowlege as makes it "inequitable" for one party to retain his advantage, " 'the court will deal as summarily with that inequitable position of the party, as in the other case with his fraud.' " *Home Owners' Loan Corporation* v. *Stevens*, supra, 11. The defendant argues that it is apparent that "the Court found there was a unilateral mistake on the part of the Defendant coupled with the Plaintiff's inequitable conduct in executing a deed which she knew did not reflect the actual agreement of the parties concerning the location of the new house and in now seeking to enforce it."

We agree that this appears to be what the court found. We also agree with the plaintiff's claim that the court, from what is before us, failed to apply the proper standard of proof in decreeing reformation.

The burden of proof on the issue of reformation is upon the party seeking it. *deKay* v. *Shorehaven Realty Co.*, 104 Conn. 36, 47, 132 A. 533 (1926); see also *Molk* v. *Micklewright*, 151 Conn. 606, 610, 201 A.2d 183 (1964); 66 Am. Jur. 2d, Reformation of

Instruments § 117. The court, in finding for the defendant on the first count of his counterclaim did not state or imply that it concluded that the defendant had sustained that burden. While, ordinarily, we would not advert to that we do so in this case because of the high standard of proof required and because the quality of evidence that is referred to in the memorandum of decision does not, as a matter of law, rise to this standard.[10] We hasten to point out that we fully realize that the trier is the judge of credibility[11] and, specifically, that what the terms of the agreement were was a question of fact for the trier. See *Patalano* v. *Chabot,* supra, 360. This court is limited to corrections of errors of law; *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980); and the question of whether, on the facts found, the court has held the defendant, who had the burden of proof on the reformation issue, to a less exacting standard than the law requires becomes one of law and is reviewable. *Rozycki* v. *Yantic Grain & Products Co.,* 99 Conn. 711, 715, 122 A. 717 (1923); see also *Burk* v. *Corrado,* 116 Conn. 511, 513, 165 A. 682 (1933); Maltbie, Conn. App. Proc. § 165.

We make this observation after examining the trial court's memorandum of decision.[12] See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn.

[10] Where this standard is required, it facilitates appellate review if the trial court's memorandum indicates that it has been applied.

[11] There is no question that the court may make its finding on the basis of all the credible evidence, irrespective of the source from which that evidence comes. *Craig* v. *Dunleavy,* 154 Conn. 100, 103, 221 A.2d 855 (1966); *Cinque* v. *Orlando,* 140 Conn. 591, 593, 102 A.2d 532 (1954).

[12] We have had occasion to indicate the necessity of setting out all the decisional facts in the memorandum of decision. See *Scherr* v. *Scherr,* 183 Conn. 366, 368, 439 A.2d 375 (1981).

217, 221–22, 435 A.2d 24 (1980). The decision sets out, essentially, certain portions of the plaintiff's testimony and refers to certain exhibits. The memorandum of decision also notes that the evidence referred to here "as well as other facts found from the evidence" are the basis for the court's ultimate conclusion in favor of the defendant. We have difficulty ascertaining from the memorandum what these "other facts" were which form the basis of this conclusion. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. Accordingly, we cannot say whether on the basis of all the evidence the court, applying the required standard of proof, could have found for the defendant as it did. An examination, however, of the evidence, as set out in the memorandum, causes us to conclude that the court did not apply the required standard of proof in finding for the defendant.

The court found that the actual agreement between the parties concerning the distance between the plaintiff's existing house and the one being built by the defendant was "that the new house would be at least 24 feet from the *house* on plaintiff's adjoining lot." (Emphasis in original.) Its memorandum also states that the plaintiff's testimony "was *ambiguous* on the vital question," obviously referring to the terms of the agreement in question. (Emphasis added.) The court then went on to point out that in the Fischer contract, the plaintiff's attorney used language consonant with the language that the defendant claimed she made with him. Citing the familiarity of both parties with the Fischer contract, the court concluded that "[i]t is reasonable to infer that, with this in mind," the parties agreed that the location of the new house

was to be twenty–four feet from the plaintiff's existing house rather than twenty-four feet from her lot line.

" 'Ambiguous' can be defined as unclear or uncertain." *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 511, 280 A.2d 877 (1971). It has often been defined to mean that which is susceptible of more than one interpretation. See, e.g., *Continental Casualty Co.* v. *Borthwick,* 177 So. 2d 687, 690 (Fla. App. 1965) (of uncertain meaning and that which may be fairly understood in more ways than one); *McCarthy* v. *McCarthy,* 162 N.W.2d 444, 448 (Iowa 1968) (of doubtful nature or meaning, equivocal); *Lamb Plumbing & Heating Co.* v. *Kraus-Anderson,* 296 N.W.2d 859 (Minn. 1980) (susceptible of more than one interpretation based on its language alone); *Patti* v. *Western Machine Co.,* 72 Wis. 2d 348, 351–52, 241 N.W.2d 158 (1976) (reasonably susceptible of more than one meaning). Testimony which is termed "ambiguous" hardly contributes to the high degree of proof required to order reformation. Even if we put aside the propriety of using the prior written contract with Fischer together with her "ambiguous" testimony to conclude that the agreement was as the court found it to be and assume arguendo that it could be so used, this still does not measure up to that higher standard of proof which was required to be used in order to find for the defendant. Moreover, we reluctantly cannot agree that it was reasonable to "infer" under the circumstances that this was what the parties agreed. An inference or conclusion which will, generally speaking, be treated by this court as one of fact, will not be reviewed where the facts have been properly found unless the court can see from the rec-

ord that in drawing such an inference, the court imposed some duty upon the parties which the law did not impose or absolved them from some duty which the law required under the circumstances. *Burk* v. *Corrado,* supra; *Rozycki* v. *Yantic Grain & Products Co.,* supra; *Farrell* v. *Waterbury Horse R.R. Co.,* 60 Conn. 239, 257, 21 A. 675 (1891); Maltbie, Conn. App. Proc. § 165.

In sum, the facts set out in the memorandum of decision do not meet the standard of proof, as a matter of law, to permit judgment for the defendant on the counterclaim. This standard of proof should operate " ' "as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." ' (*Southard* v. *Curley,* 134 N.Y. 148, 151, 31 N.E. 330, 331 [1892])." *George Backer Management Corporation* v. *Acme Quilting Co.,* supra, 220. As we have indicated above, the evidence set out in the court's memorandum is such that we cannot say that if the court applied the required standard of proof to all the evidence adduced, it could still have found for the defendant. A new trial is therefore necessary on the first count of the defendant's counterclaim. Where error is found, the power of this court to remand for a new trial is unqualified. General Statutes § 52-265; *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 24, 392 A.2d 962 (1978); *Thomas F. Rogers, Inc.* v. *Hochberg,* 143 Conn. 22, 25, 118 A.2d 910 (1955).

There is error in part, the judgment on the first count of the counterclaim for the defendant is set aside and a new trial is ordered on the first count.

In this opinion the other judges concurred.