[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter arises from a dispute concerning the sale and transfer of certain real estate. On October 20, 1994, the plaintiff, John Nadja, filed a one count amended complaint against the defendants, Salvatore M. Locicero, Sr., Salvatore M. Locicero, Jr., Joyce G. Locicero, and World Savings and Loan Association.
The amended complaint alleges that in 1987 Nadja owned a parcel of land located on the corner of Hillside Avenue and Coram Road in Shelton, Connecticut. The parcel, as described in the first paragraph of the amended complaint, consisted of approximately .453 acres of land. In 1987, Nadja allegedly subdivided the parcel into two lots, hereinafter referred to as the front lot and the rear lot. The front lot allegedly consisted of CT Page 883 approximately .266 acres and contained a dwelling and a garage.
The rear lot was an unimproved, vacant lot that consisted of approximately .187 acres of land.
The amended complaint alleges that after Nadja subdivided the parcel he placed only the front lot and all its improvements on the market for sale. The amended complaint further alleges that on about December 8, 1988, the Lociceros entered into an agreement to purchase the front lot. On January 30, 1989, Nadja executed and delivered to the Lociceros a warranty deed which, allegedly, all the parties believed conveyed only the front lot. The warranty deed, however, allegedly due to a mutual mistake of the parties, erroneously described both the front and the rear lot as the property conveyed.
Nadja, unaware that the rear lot was also conveyed by the warranty deed, allegedly continued to pay the taxes on the rear lot until October 1993. In October 1993, someone from the tax assessors office allegedly informed Nadja that the town records indicated that the Lociceros were the owners of the rear lot. Nadja thereafter allegedly notified the Lociceros of the mistake and requested they execute a corrective deed. The Lociceros allegedly refused and still refuse to correct the mistake and reconvey the rear lot to Nadja. Therefore, Nadja commenced this action and prays that the court direct the defendants to execute a corrective deed reconveying the rear lot to Nadja. Nadja further requests a judgment awarding him costs for the action and any other relief as in law or equity may appertain.[1]
A cause of action for reformation of a deed "rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." Lopinto v. Haines, 185 Conn. 527, 531, 441 A.2d 151
(1981). "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." Id., 532.
Thus, "[t]he remedy of reformation `is appropriate in cases of mutual mistake — that is where, in reducing to writing an agreement CT Page 884 made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction.' . . . In short, the mistake, being common to both parties, effects a result which neither intended." (Citations omitted.) Id. The remedy of reformation is also appropriate in cases of a unilateral mistake by one party coupled with actual or constructive fraud or inequitable conduct on the part of the other party. Id., 533.
"The burden of proof on the issue of reformation is upon the party seeking it." Id., 535. Since the reformation of a deed or contract occasions serious consequences, "`evidence of a very high order' [is required] to overcome . . . `the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties.'" Id., 533-34. Therefore, the standard of proof for reformation of a deed or contract is by clear, substantial and convincing evidence. Id.
Clear, substantial and convincing evidence requires "'that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find quilt in a criminal prosecution. . . . [T]he burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.'"Freeman v. Alamo Management Company, 221 Conn. 674, 678-79,607 A.2d 370 (1992). Effectively, "[t]his standard of proof should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." Lopinto v. Haines, supra, 185 Conn. 539.
Testimonial and documentary evidence in this matter was received by the court over four days. The plaintiff did not carry his burden of persuading the court that the agreement between the parties was other than that described in the real estate contract or the warranty deed. The plaintiff contends that the Lociceros entered into a contract to purchase only the front lot and the improvements thereon. Furthermore, the plaintiff contends that the Lociceros knew that the plaintiff was retaining possession of the rear lot and they were also aware of the location of the boundary line separating the front lot from the rear lot.
The testimonial and documentary evidence, however, is far from CT Page 885 clear and convincing that the agreement between the parties was for the purchase of only the front lot. The testimonial evidence was conflicting. Under oath, the Lociceros stated that they thought they were purchasing the entire lot. The Lociceros further testified that they were unaware that the property was subdivided into two lots. Significantly, there is no evidence impeaching the credibility of any of the witnesses. Thus, the testimonial evidence is at best conflicting, and it fails to prove by clear and convincing evidence that the agreement between the parties was for the purchase of the front lot only.
Moreover, the documentary evidence described below supports the Lociceros testimony that they thought they were purchasing the entire property.
On December 16, 1988, the Lociceros entered into a binder agreement to purchase, and Nadja entered into a binder agreement to sell, "[p]roperty known as 61 Coram Road." See Plf's Exh. B (copy of the binder agreement). The binder agreement fails to describe the property known as 61 Coram Road. Moreover, an inspection of the premises by the Lociceros would have revealed no physical demarcations indicating that the property had been subdivided into two separate lots.[2] Instead, an inspection of 61 Coram Road would only reveal a house and a detached garage with what appeared to be a back yard. Therefore, the binder agreement fails to establish that the purchase agreement between the parties was only for the front lot.
After entering into the binder agreement, the Lociceros engaged Attorney Stanley Goldstein to act as their representative in the real estate transaction. Attorney Goldstein testified that once he was retained by the Lociceros, he drafted a letter on December 21, 1988, to Nadja's attorney, Ms. Joan Yudkin. See Def's Exh. 7. In the letter, Attorney Goldstein informed Attorney Yudkin that he represented the Lociceros and requested her to send him the proposed real estate contracts.
On the same day, December 21, 1988, Attorney Yudkin, apparently already aware that Attorney Goldstein represented the Lociceros, drafted a letter to Attorney Goldstein. See Def's Exh. 18. Along with the letter, Attorney Yudkin sent Attorney Goldstein one original and two copies of a real estate sale contract for 61 Coram Road. On December 30, 1988, Attorney Goldstein returned one original and two copies of the contract to Attorney Yudkin. See Def's Exh. 8. The returned contract contained some modifications CT Page 886 and it was signed by the Lociceros. Attorney Goldstein testified that Plaintiff's Exhibit E is a copy of the sales contract Attorney Yudkin forwarded to him, except that Exhibit E was the final contract that contained the modifications.
On January 11, 1989, Attorney Goldstein sent Attorney Yudkin a letter informing her that his title search revealed that there was an encroachment on the property the Locicieros [Lociceros] intended to purchase. See Def's Exh. 10. Along with the letter, Attorney Goldstein included a copy of the Certificate of Title, which describes the encroachment, and a map, which indicates the location of the encroachment. See Def's Exh. 11 (copy of the certificate of title) and Exh. 12 (copy of the map attached to the certificate of title). An examination of the map discloses that the encroachment complained of was a neighbor's garage. Most important, however, is the fact that the encroachment was located on the rear lot. Thus, if Attorney Goldstein was complaining about an encroachment that was located on the rear lot, it follows that Attorney Goldstein and the Lociceros thought that they were purchasing the entire piece of property located at 61 Coram Road.
The documentary evidence therefore lends support to the Lociceros claim that they thought they were purchasing the entire piece of property. At a minimum, the documentary evidence denies the plaintiff's claim that the Lociceros knew the plaintiff was retaining the rear lot. The plaintiff concedes that Attorney Yudkin drafted the warranty deed and described the entire property as the property conveyed. Based upon this evidence, the court is unable to conclude that the plaintiff has overcome the heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties. The plaintiff has failed to establish by clear, substantial and convincing proof that the written instrument does not conform to the agreement of the parties and "that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." Lopinto v. Haines, supra, 185 Conn. 531.
In reviewing all the evidence, it appears that a very competent attorney, Attorney Yudkin, acting as an agent for the plaintiff, failed to claim any error in the description of the property. At the closing, the closing attorney read the description to all parties without objection. As the court does not know the inner workings between the plaintiff and Attorney Yudkin, they could not establish blame except to state that if the CT Page 887 plaintiff's claim is to be realized, we would have to assume that Attorney Yudkin exceeded her authority. However, you cannot direct this lack of information to the defendant as the agency was between Attorney Yudkin and the plaintiff and without any participation on behalf of the defendant. Moreover, there was no evidence of any utilization of the testimony of Attorney Yudkin.
Accordingly, the court refuses to order the deed reformed. The court, however, orders Salvatore M. Locicero, Sr., Salvatore Locicero, Jr., and Joyce G. Locicero to jointly pay the plaintiff the amount of taxes he paid on the rear lot, plus six percent (6%) interest per annum. The court declines to award either party costs in this action.
Philip E. Mancini, Jr. State Trial Referee