[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The following facts are not in dispute. On February 25, 1992, the defendant, acting by its President, Kenneth Kovacs, signed a $165,000 note secured by a mortgage to the Greenwood Bank of Bethel on two lots on Lake Candlewood in Brookfield, referred to as Lot 7 at 2 North Lake Shore Drive, and Lot 19 at 16 North Lake Shore Drive. (Plaintiff's Exhibit 4.) Prior to this date, this bank had a $125,000 mortgage that had gone into foreclosure on Lot 19, and the defendant was also in arrears on several other loans. The loans were restructured and the defendant agreed to add Lot 7, adjoining Lot 19, as additional security for this new mortgage. Because the defendant had defaulted on loans in the past, the bank required the defendant to execute a trust agreement in which these two lots were transferred to Martin L. Lawlor, Trustee. The trustee was authorized to sell these lots and thereby avoid a foreclosure if the defendant defaulted for more than sixty (60) days on the mortgage loan. (Plaintiff's Exhibit 3.) The bank was represented by Attorney James Mannion, who prepared all the loan documents and the quitclaim deed to the trustee. Attorney Mannion also served as chairman of the bank's Board of Directors. Attorney Hugh Lavery represented the defendant at the closing. Both the mortgage and quitclaim deed from the defendant described Lot 7 and Lot 19 by reference to subdivision maps of Candlewood Shores filed with the Brookfield CT Page 11756 Town Clerk. (Plaintiff's Exhibits 7 and 10.) The two vacant lots adjoin each other and each contain approximately .21 acres, with 70 feet of frontage on Lake Candlewood.
On November 6, 1992, the Bethel bank had failed and F.D.I.C. was appointed receiver, and on October 24, 1994, the receiver assigned this $165,000 mortgage to the plaintiff. (Plaintiff's Exhibit 5.)
The plaintiff's complaint alleges a mistake was made (or scrivener's error) by Attorney Mannion in the mortgage and quitclaim deeds, in which he described only Lot 7, instead of Lots 1 through 7, as was his intention. These deeds, however, granted water rights to Lake Candlewood for Lots 1 through 7 in support of the plaintiff's claim that the parties intended to mortgage and convey Lots 1 through 7 to the trustee. The defendant claims he intended to mortgage and convey only Lot 7, in addition to Lot 19, and in his cross complaint is requesting that the description be reformed to limit water rights to Lot 7 only.
The plaintiff called Attorney Mannion as their only witness. He believed that the bank, in refinancing this new loan, required the defendant to mortgage Lots 1 through 7.
The Chicago Title Policy insured the title to land located at numbers 2 and 16 North Lake Shore Drive for Lots 7 and 19.
In reviewing his title research, Attorney Mannion testified that the Brookfield assessor's records assessed Lots 1 through 7 as one parcel containing 1.45 acres (Plaintiff's Exhibit 6), as did the Zoning Enforcement Officer's (Plaintiff's Exhibit 8, dated March 27, 1987). At the closing of the mortgage, the total taxes of $17,972.86 were paid on this one parcel. In a letter to Attorney Grossman, dated April 11, 1983, who represented the defendant in the purchase of Lots 1 through 7, written by William T. Stanley, as Chairman of the Board of Tax Review, advised him these seven lots were up-zoned to one (I) acre, and were merged into one parcel (Plaintiff's Exhibit 9 Defendant's Exhibit 6). From the tax and zoning records, Attorney Mannion concluded these seven lots merged into one parcel with a street address known as 2 North Lake Shore Drive.
The defendant purchased the seven lots by a Warranty Deed recorded volume 195, page 468 of the Brookfield Land Records on CT Page 11757 March 31, 1987. (Plaintiff's Exhibit 1.) The defendant, through its President, Kenneth Kovacs, testified he intended to mortgage and convey Lot 7 only as the additional security to Lot 19.
The plaintiff notified the defendant in a letter dated December 8, 1994, that a mistake had been made in the description in the mortgage deed. (Plaintiff's Exhibit 11.)
The law is well settled that the party seeking reformation of a deed has the burden of proof. The proof must be by clear, substantial and convincing evidence, a higher standard than by a fair preponderance of the evidence applicable to civil actions.Lopinto v. Haines, 185 Conn. 527 (1981).
Where fraud is absent, as it is in this case, it must be established that both parties agreed to something different from what is expressed in writing, and the proof should be clear so as to leave no room for doubt. Bishop v. Clay Insurance Co.,49 Conn. 167, 172 (1881); Greenwich Contracting Co. v. BonwitConstruction Co., 156 Conn. 123, 126 (1968).
"Reformation of a deed can be ordered when it has been executed as the result of a mutual mistake and by reason thereof each party has done what neither intended." Patalano v. Chabot, 139 Conn. 356,359, 94 A.2d 15 (1952).
"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as a result of mutual mistake . . . We have held that I this also applies to actions for reformation of a deed . . . the function of which is merely to pass title to land, pursuant to the agreement of the parties . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument [which was] a result of mutual mistake." (Citation omitted; internal quotation marks omitted.) Lopinto v. Haines, 185 Conn. 527,531-32 (1981).
There was no evidence in this case of a mutual mistake where the deed contained a description of the wrong property as inDerby Savings Bank v. Oliwa (Connecticut Law Journal, July 28, CT Page 11758 1998).
Attorney James Mannion admitted making the mistake of omitting Lots 1 through 6 in both the mortgage and quitclaim deeds. He believed that these seven vacant lots known as 2 North Lake Shore Drive had been up- zoned from R-7 to R-40(1 acre zone) by the Brookfield Zoning Commission and merged into one parcel of 1.45 acres. (Plaintiff Exhibits 6, 8 and 9.) He testified that the bank, in refinancing the new $165,000 loan, required the defendant to mortgage all seven lots, and the parties knew and intended for the mortgage and quitclaim deed to cover all these lots. In reviewing the title search, Attorney Mannion testified that the Brookfield assessor's records the report and the Zoning Enforcement Officer, and a letter from the Chairman of the Board of Tax Review confirmed that seven lots had been up-zoned to R-40 (I acre minimum) (Plaintiff's Exhibits 6, 8 and 9). From these exhibits, the Court finds that between 1983 to 1987, these seven lots were now taxed and zoned as one parcel of 1.45 acres. The fact that the defendant conveyed and mortgaged the water rights to Lake Candlewood to the seven lots, is clear and convincing evidence of his intention to mortgage all seven lots that had merged into one parcel. Without these water rights, the value of the other six lots would be significantly reduced. When the defendant purchased the seven lots on March 31, 1987, he was represented by Attorney Grossman (Plaintiff's Exhibit 1). In testifying for the defendant, he admitted receiving a letter from the Chairman of the Brookfield Board of Tax Review dated April 11, 1983, advising him that Lots 1 through 7 were now assessed as one parcel in order to conform to the one acre zone.
Attorney Grossman knew the town considered these lots merged into one parcel five years before. The defendant took title to the seven lots in 1987. (Plaintiff's Exhibit 1, and Defendant's Exhibit 6.)
The defendant testified it was his understanding that the bank wanted Lot 7 as additional security for this new mortgage. The defendant introduced the mortgage closing statement and a corporate resolution which referred to Lot 7 prepared by his attorney. (Defendant's Exhibits 4 and 5.) The defendant introduced a letter dated January 21, 1992 from Equity Release Corp., as agent for the bank, referring only to Lots 7 and 9 as proof of his intention to only mortgage and convey these two lots. This letter required a written commitment from the bank's Board of Directors which was never prepared (Defendant's Exhibit CT Page 11759 1). These exhibits add little weight to what the bank had intended would be mortgaged to them.
"Reformation is also available in equity when the instrument to be reformed does not express the true intent of the parties owing to the mistake of one party." Harlach v. MetropolitanProperty Liability Ins. Co., 221 Conn. 185, 190-191 (1992).
The court finds by clear and convincing evidence that a unilateral mistake was made by the bank's attorney in omitting Lots 1 through 6 in the mortgage and quitclaim deeds. It finds the bank intended for the defendant to mortgage Lot 1 through 7 and not only Lot 7. In paragraph 2 of the description, these deeds included the water rights to Lots 1 through 7 in Candlewood Lake and refers to 2 North Lake Shore Drive. "When a deed contains multiple descriptions that appear to be inconsistent and irreconcilable, the rule is that the description containing less certainty must yield to that with greater certainty." Mt. MaumeePartnership v. Peet, 40 Conn. App. 752, 755. The inclusion of the water rights to all seven lots provide a greater certainty in this case.
The defendant is ordered to reform the mortgage and quitclaim deed by describing Lots 1 through 7 of the premises referred to as 2 North Lake Shore Drive, Brookfield, Connecticut.
The defendant's cross complaint is denied in that he failed to meet his burden of proof to warrant reformation of the water rights conveyed in these deeds.
Petroni, J.