[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF THE CASE
This action, having a return date of December 2, 1997, was instituted by the plaintiff, Joseph Skirtic, against the defendants Donald Julian and Raymond Julian based on the defendants' failure to repay money allegedly lent to them. The plaintiff's second substituted complaint is dated August 10, 2001 and is in three counts. The first count seeks collection of a demand note executed by the defendants and assigned to the plaintiff Alternatively, the second count seeks recovery of money provided to the defendants that they agreed to repay but failed to do. The third count seeks to reform the demand note. More specifically as to the third count, the complaint alleges that the parties intended the interest rate on the demand note to be 12% per annum, but the note states that the interest rate is "12% over prime." The plaintiff seeks to reform the language of the note to reflect that the interest rate under the note is 12%.
In August 2001 the defendants filed an answer, special defenses, set-offs and a counterclaim. The special defenses allege that the plaintiff is barred from recovery for various reasons: usury pursuant to § 37-4, 37-8 and § 42a-3-305 (1) (ii); because the funds under the note were not tendered to Raymond; because Raymond has paid any obligation due under the note and has been discharged; because the plaintiff is not a holder in due course; because there has been an accord and satisfaction; because of a mutual mistake in that Raymond believed that "he was only signing for a $10,000 obligation or a $10,000 portion CT Page 3969 of the total of the note"; because of the statute of limitations under General Statutes § 52-576 or § 42a-3-118; and lastly because there was no consideration to support the demand note.
By way of set-off the defendants claim that they provided goods and services to the drawer/assignor of the demand note for which they are entitled to receive credit against any amounts found to be owed to the plaintiff In the counterclaim, Raymond seeks reformation of the demand note to reflect the parties' alleged intention that his obligation was not joint and several and was limited to $10,000.
In response, the plaintiff generally denies the defendants' special defenses, with the exception that he admits that he is not a holder in due course. The plaintiff also admits that the defendants are entitled to a set-off in the amount of $55,000. The plaintiff generally denies the allegations of the counterclaim.
The bench trial of this case commenced on August 23, 2001, the parties having waived their right to jury trial. The parties have filed post-trial memoranda and the case is ready for disposition. The last post-trial filing was the plaintiff's reply memorandum dated December 20, 2001.
In their post-trial memorandum, the defendants only address the counterclaim seeking reformation and two special defenses based on the usury statutes and the statute of limitations. The court will therefore limit its examination to these issues and will consider the other special defenses as being either subsumed within the defenses addressed by the defendants or abandoned by them. As discussed further below, the court rules against the plaintiff's request for a reformation of the demand note and the court rules in favor of the defendants on their first special defense alleging a violation of the usury statutes. Therefore, judgement shall enter in favor of the defendants on the complaint. As to the counterclaim filed by the defendant Raymond Julian seeking reformation of the demand note, the court rules in favor of the plaintiff
 II FACTUAL FINDINGS
Sometime in early 1986, a Donald Petrucci was contacted by a third party and was informed that Donald and Raymond wanted to borrow some money. On or about March 1, 1986, Donald met with Petrucci and received the funds. Although there is a question about the exact amount of the loan, the court credits the plaintiff's evidence and finds that the CT Page 3970 amount given was $60,000. After advancing the money, Petrucci sent Donald a demand note for $60,000. This demand note had signature lines for Julian R.R. Construction, Donald Julian and Raymond Julian, but only Donald signed it.
Sometime soon thereafter, Petrucci contacted Raymond and informed him that the note was no good and that Donald and Raymond should execute a $70,000 note to replace it. This $70,000 note was signed by Donald and Raymond and was also dated March 1, 1986. It was a demand note providing that the makers "INDIVIDUALLY, JOINTLY AND SEVERALLY promise to pay to the order of DONALD A. PETRUCCI . . . the principal sum of $70,000 with interest at the rate of 12 percent over prime, monthly in arrears, together with all costs, expenses and attorneys' fees incurred by the Holder of this Note, given to secure it, in any proceeding for the collection of this Note." There is a dispute in the testimony about who hand wrote the number "12" as the interest rate onto the initial $60,000 note. Petrucci testified that he mailed the document to the defendants with the interest rate blank for them to fill in. On the other hand, the defendants testified that they did not put this figure on the document. There is no dispute, however, that Petrucci otherwise prepared both documents, and for the $70,000 demand note, he wrote on the note that the interest rate was 12 percent over prime.
The evidence is also conflicting about who initiated or requested the change from $60,000 on the first note to $70,000 on the second one. Nevertheless, there is no dispute that some time prior to March 1986, Raymond became indebted to Petrucci in the amount of $10,000 relating to a condominium that Raymond had purchased. The debt evidenced by the note was increased from $60,000 to $70,000 to reflect this separate debt owed by Raymond. Both Petrucci and Raymond testified and the court finds that by December 1995, Raymond had repaid this $10,000 to Petrucci in full, without interest. (8/32/01 Tr., p. 107-108; Ex.4). Petrucci admits that no interest was expected to accrue on this $10,000 obligation.
In 1995, Petrucci retained an attorney to collect the debt owed under the $70,000 demand note. At Petrucci's direction and based on information provided by Petrucci, this attorney sent the defendants a letter dated October 20, 1995 indicating that as of March 1, 1995, the debt, with accrued interest, was $194,116 (less certain credits). The letter also stated that from March 1, 1995 to September 1, 1995, an additional $7,000 in interest had accrued. This October 20, 1995 letter made a demand for interest at a rate far exceeding 12% per annum.
Petrucci subsequently assigned his interest in the note to Attorney Phillip Swaim, who later reassigned it back to Petrucci. Petrucci then assigned the note to his son-in-law, the plaintiff, Joseph Skirtic, CT Page 3971 solely as an accommodation. Petrucci is the real party interest in the collection of the note.
Sometime prior to 1995, the defendants, through construction work, provided goods and services directly to or for the benefit of Petrucci for which they were never paid. The parties have stipulated that the value of this work is $50,000 and that the defendants may set-off this amount against any amounts found to be owed to the plaintiff
 III DISCUSSION A REFORMATION
Both parties seek reformation of the demand note. The plaintiff seeks to reform the note to reflect a 12% interest rate, rather than an interest rate that is "12 percent over prime." Raymond seeks to reform the note to reflect that his obligation for the loan is limited to the $10,000 that he has paid. Both these claims are rejected.
The law governing reformation of a contract is well established. "A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." Lopinto v. Haines,185 Conn. 527, 531, 441 A.2d 151 (1981).
In this case, the parties seek reformation in different ways, but they both claim that they are entitled to reformation because of a mutual mistake. "The remedy of reformation is appropriate in cases of mutual mistake — that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction." Id., 522 (citations omitted and internal quotation marks omitted).
A party seeking reformation is required to show proof justifying reformation by clear, substantial and convincing evidence. Id., 534. This demanding burden of proof is necessitated in order to overcome "the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties." Id. (citations and CT Page 3972 internal quotation marks omitted). In regard to the plaintiff's claim for reformation, the plaintiff has failed to meet this burden of proof There is no evidence whatsoever in the record indicating that Petrucci and the defendants intended for the interest rate of the demand note to be 12% per annum or that the phrase "over prime" was placed in the note solely by mutual mistake. There is no evidence in the record that the parties had any discussions about the interest rate or reached any meeting of the minds regarding the rate other than as reflected in the note itself For example, Petrucci testified that he calculated the interest due under the note at a 12% compounded rate, rather than at a simple rate of interest. The fact that one party, Petrucci, may have had some confusion about the calculation of the interest rate and the other parties (the defendants) may claim that the rate expressed in the note is usurious does not establish by "clear, substantial and convincing" evidence that the parties to the agreement intended for the rate to be 12% or any rate other than the rate as reflected in the note itself "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . (Internal quotation marks omitted.) Lopinto v. Haines,
supra, 185 Conn. 532.
As to defendant Raymond Julian's counterclaim seeking reformation, he too has failed to meet his burden of proof that the intent of the parties, or specifically the intent of himself and Petrucci, was that he would only be liable for $10,000 of the note amount. The evidence indicates that a third-party, a mutual friend of Petrucci and the defendants, contacted Petrucci indicating that both defendants wanted to borrow the money. Indeed, Raymond testified that he initially had planned to use the money with Donald, but at the last minute he changed his mind. However, there is no evidence indicating that he informed Petrucci about this change of his decision. When Donald met with Petrucci and picked up the money, there is no evidence that Petrucci was told anything to the contrary, or more specifically, Petrucci was not told that the money was for the benefit of Donald alone. The evidence offered by Raymond to the contrary is rejected by the court as not being credible.[1]
The evidence clearly establishes that there was reason for Petrucci to believe, and the court expressly finds, that he did believe that both defendants were obligating themselves to repay the $60,000 given to Donald. There may very well have been some reservations or confusion on the part of Raymond; he may have believed that since Donald received the full benefit of the $60,000, he was only responsible for repaying $10,000 of the note, which he ultimately did pay. However, even if the evidence is credited in his favor to this extent, the record still fails to CT Page 3973 establish a mutual as compared to a unilateral, mistake necessary to justify a reformation on this ground. "Where a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract, he is deemed to have assumed the risk of a mistake." Pacelli Brothers Transportation, Inc. v.Pacelli, 189 Conn. 401, 408, 456 A.2d 325 (1983). "The general rule is that when a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so. . . ." (Internal quotation marks omitted.) AB Small Business Investment v. Husser, Superior Court, judicial district of Litchfield, Docket No. 065741 (November 9, 1995,Pickett, J.).
Raymond makes too much of the evidence indicating that he and Petrucci treated the $10,000 debt as a separate transaction. Assuming arguendo
that the $10,000 debt emanated from a separate transaction for which Raymond was solely responsible to the exclusion of Donald, it does not automatically follow that the parties also intended that Raymond would not be responsible for the $60,000 balance of the note. Stated differently, the evidence suggests that Petrucci's intent was that Raymond would be solely responsible for $10,000 of the debt and that both of the defendants would be responsible for the $60,000 balance. The court does not make an explicit finding to this effect, because even if made it would provide no benefit to Raymond. Under the counterclaim, Raymond seeks reformation on the ground that the parties made a mutual mistake when they executed the demand note because they intended him to be obligated for only $10,000 of the $70,000 note. As previously stated, reformation must be based on clear, substantial and convincing evidence, and Raymond has failed to meet this burden of proof
Alternatively, Raymond argues that if there was only a unilateral mistake, than reformation is justified because of Petrucci's inequitable conduct. This inequitable conduct is premised on Petrucci making a demand against Raymond only after he learned about Donald Julian's "financial difficulties" and on Petrucci's attempt to collect more than was due by using an excessive interest rate. Neither of these claims proves inequitable conduct to such a degree that the defendant has established the equitable right to reformation. See generally, Lopinto v. Haines,
supra, 185 Conn. 535-539[2]
 B Usury
The demand note imposed an interest rate of "12% over prime," and the CT Page 3974 parties have stipulated that when the note was executed the prime rate was 9%. In their first special defense, the defendants claim that the plaintiff is precluded from collecting the note because the money was lent at a usurious rate in violation of Section 37-4 of the General Statutes.[3]
Section 37-4, with exceptions not applicable here, prohibits the loaning of money at a rate of interest exceeding 12% per annum. Connecticut's usury statutes provide particularly severe penalties — a lender who loans money at an illegal rate of interest is barred from recovering both interest and principal. See General Statute § 37-8;Stelco Industries, Inc. v. Zander, 3 Conn. App. 306, 308-309, 487 A.2d 574
(1985). Because of the penal nature of the usury remedy, the statute is strictly construed; Stelco Industries, Inc. v. Zander, supra,3 Conn. App. 309; and the lender's intent is a relevant inquiry. "[A] lender can evade the usury bar by showing that he had not intent to extract more that the lawful rate of interest." Maresca v. DeMatteo,6 Conn. App. 691, 696, 506 A.2d 1096 (1986). The court finds that the demand note at issue here imposed a usurious interest rate and that the lender intended to extract a usurious rate in violation of the statute. The evidence proffered by the plaintiff to contend that there was no intent by either himself or his predecessors interest to collect a usurious rate is rejected as not being credible.
There is no dispute that the face of the note sought an interest rate in excess of the statutory limit. The demand note imposed a yearly interest rate of "12% over prime" when the prime rate was 9%. Consequently, when executed, the note called for a 21% interest rate a year, well over the statutory rate of 12% per annum. Additionally, the evidence establishes that an attorney was retained in 1995 to collect the note, and the amount asserted as being owed and demanded to be paid was calculated to be $194,116 as of March 1, 1995 (without reduction for any payments or credits). At 12% per annum, it is abundantly clear that between March 1986 (when the note was executed) and March 1995, no more than $75,600 in interest could have accrued on the $70,000 principal balance, making the total debt $145,600. Thus the record clearly establishes that a demand was made to collect interest on the note in excess of the statutory rate.
On these facts, the plaintiff's lamentations that there was no intent to violate the usury law are to no avail. The question here is not whether the prior holders of the note had the specific intent to violate the law, but whether any of them, particularly Petrucci, had the more general intent to exact a rate of interest that was usurious. In short, a lender cannot be heard to say that it did not intend to do what it in fact attempted to do. By imposing and demanding interest in excess of the CT Page 3975 legal rate, the lender's actions were "per se usurious and cannot be condoned by any declaration of lack of intent to violate the law." Goldenv. Lyons, 151 Conn. 21, 27, 193 A.2d 487 (1963).
Similarly, Petrucci's claim that he calculated the amount demanded in the October 20, 1995 demand letter by a 12% compounded rate, represents further evidence of his usurious intent, rather than providing evidence to the contrary. "[T]he compounding of annual interest at a 12 percent rate in these circumstances would be violative of General Statutes 37-4
which prohibits ordinary loans at a greater interest than 12 percent per annum." Loomis Loomis v. Stecker Colavecchio, 6 Conn. App. 88, 94,503 A.2d 181 (1986).
 C Statute of Limitations
Under the Eighth Special Defense, the defendants contend that the plaintiff's claim is barred by the statute of limitations under either General Statutes § 52-576 (a) or § 42a-3-118. In their post-trial memorandum, the defendants rely on § 52-576 (a) as being the applicable statute of limitations. This statute provides that a cause of action on a written contract "must be brought within six years after the right of action accrues." However, the court concludes that this is not the statute of limitations governing this case.
The court finds that the note at issue here is a negotiable instrument under General Statutes § 42a-3-104[4] and is a demand note under General Statutes § 42a-3-108[5]. Consequently, the applicable statute of limitations is the statute governing negotiable demand notes or General Statutes § 42a-3-118 (b). Under this statute, a cause of action to collect a demand note must be instituted within six years from the date of the demand, or if no demand is made, the claim is barred if no payments are made on the note for a continuous ten year period.[6]
As this is a special defense being asserted by the defendants, they have the burden to prove by a preponderance of evidence the essential facts establishing that the plaintiff's action is barred by this limitation period.
The evidence is unclear as to exactly when the first demand for payment was been made in this case, but the record is clear that in or about 1995 Petrucci retained an attorney to collect on the note and that this attorney sent a demand letter to the defendants in October 1995. (Ex. 7). This action was instituted in December 1997, well within six years of any demands made in 1995. As the court finds that the action was filed within the applicable limitation period, the court will not reach the CT Page 3976 plaintiff's arguments that the limitation period was tolled or waived by the defendants. These arguments were raised in the plaintiff's post trial memorandum, but were not asserted in his reply to the special defenses.
 III CONCLUSION
In conclusion, the court finds in favor of the defendants on their first special defense that the plaintiff's action is barred by Connecticut's usury statutes, General Statutes Sections 37-4 and 37-8. Therefore, judgement shall enter in favor of the defendants Donald Julian and Raymond Julian and against the plaintiff Joseph Skirtic on the complaint. Judgement shall enter in favor of the plaintiff Joseph Skirtic and against the defendant Raymond Julian on this defendant's counterclaim seeking reformation.
So ordered this 26th day of March 2002.
____________________ STEVENS, J.